<em>Fairfield,</em><br>June, 1851.<br><br>Stedwell<br>v.<br>Anderson.

## STEDWELL and others *against* ANDERSON.

Where property has been conveyed, through mistake, by deed, which the parties never intended should be conveyed, which the grantor was under no legal or moral obligation to convey, and which the grantee could not, in good conscience, retain, a court of chancery will interfere and correct that mistake, whether it arose from a misapprehension of the facts, or of the legal operation of the deed. But where the conveyance was such as the parties intended it should be, and the grantee may, in good conscience, retain the property, although the grantor may have been mistaken as to the extent of his title, a court of chancery will generally refuse its interference.

Four sisters being the joint owners of a tract of land, they and their husbands mutually agreed, that it should be aparted to them in severalty. To carry this agreement into effect, one of the husbands undertook to prepare deeds for that purpose; and by mistake, misapprehension and ignorance of the form in which they should be drawn, the name of each husband, as grantee with his wife, was inserted; and in this state, they were executed. There was no intention, in any of them, to convey to the husbands a greater interest than they would be entitled to, as husbands of the owners in fee; but under the deeds thus mistakenly drawn

and executed, each husband took an estate in fee in the land intended to be conveyed to his wife. One of the sisters died, without having had issue; and upon a bill in chancery, brought by her heirs at law, against her husband, who was in possession, claiming title under one of the deeds; it was held, that as the defendant was concerned in making and carrying out the mistake, as he had paid nothing for the land, and as he was now holding it contrary to the intention and agreement of the parties, the plaintiffs were entitled to a decree in their favour, establishing the title in them.

Where it appeared, in such case, that more than twenty years had elapsed between the execution of the deeds, and the commencement of the suit; during which time, the defendant was in possession, and his wife never called upon him to rectify the mistake, or complained of it to him; yet as he was, unquestionably, entitled to the use of the property, and there was nothing in the manner of that use adapted to awaken suspicion that the deed was not as it should be, and neither she, nor any of her sisters, had knowledge of the mistake, until about a year and an half before her death, and when it was communicated to them, they were troubled about it; it was held, that under these circumstances there was nothing in the lapse of time, which varied the rights of the parties.

Where it further appeared, in such case, that while the defendant was in the possession and occupation of the land, he made improvements upon it, to the amount of 300 dollars; it was held, that when the plaintiffs called upon him to give up to them his share of the property, it was no more than equitable, that they should allow his proportional share of such improvements.

This was a bill in chancery, brought to correct a mistake in a conveyance of certain real estate. The material facts in the case, as found by a committee, are the following.

*Susan Carhart,* the wife of *Hachaliah Carhart, Elizabeth Anderson,* the wife of the defendant, *Mary Sherwood,* the wife of *John C. Sherwood,* and *Sally Ann Stedwell,* were sisters, and the owners in fee-simple, in equal proportions, as tenants in common, of a certain tract of land, situated in the town of *Greenwich,* containing about fifty-nine acres; and, being desirous of making a division of the same, on the 4th day of *April,* 1825, mutually agreed with each other, that the land should be divided, and that each one should have her share aparted and set out to her in severalty. In making the division, a part of said tract, containing about 14 acres and 3 roods, was aparted to the defendant's wife, and a similar portion was set to each of the other sisters. It was then agreed, that the division should be perfected, by deeds of quit-claim, to be so drawn as to carry into effect their agreement.

For this purpose, *Hachaliah Carhart* drew and prepared four deeds. Those to the three married sisters were so drawn as to convey the share of each sister to her and her husband jointly. When the parties met for the purpose of executing the deeds, a discussion arose, whether the names of the husbands should be in the deeds, or not. Some were of opinion that they ought to be inserted; but all of them were ignorant of the legal effect of the deeds as prepared; and were of opinion, that the insertion of the husbands' names would do no hurt; and that the deeds, as prepared, would carry out the agreement of the parties. The defendant insisted, that unless the names of the husbands were inserted, the deeds would be good for nothing. When this discussion was had, it did not appear, that any distinction was made between the insertion of the names of the husbands as grantees, or grantors; but the married sisters were desirous of having the deeds carry into effect their agreement, and so expressed themselves; and they all executed the deeds, believing that they merely carried into effect the partition among the sisters.

It did not appear, that either of the sisters or the husbands, at any time, prior to the execution of the deeds, ever made any enquiry as to the manner in which they should be drawn to carry into effect the agreement, or as to the legal effect of those that were drawn. But the deeds were drawn by *Hachaliah Carhart* and executed by the parties, through mistake, misapprehension and ignorance of the law, as to the operation of the same; and neither of them, at the time, supposed or expected, that the husbands acquired, by virtue of the deeds, any estate in fee.

The defendant and his wife, immediately after the execution of the deed to them, went into possession of the land thereby conveyed, and continued in possession, during her life; and since her decease, he has continued in possession. Until a year or two before her death, his conduct, acts, and declarations were entirely consistent with the claim, that the legal title to the whole tract was in her. About a year and an half before her death, she was made acquainted, by the defendant, with the fact that he had acquired a title to the land described in the deed, which information she communicated to her sister *Mary;* and they were troubled about

*Fairfield,*
June, 1851.

Stedwell
*v.*
Anderson.

it. It did not appear, that any of the other parties to the deeds ever had any knowledge of their legal operation, during her life.

During the life-time of the defendant's wife, he made sundry improvements upon the land, principally, by bringing on to it, a small house, by means of which the premises are enhanced in value to the amount of three hundred dollars.

The defendant's wife died, without ever having had issue ; and the plaintiffs are her heirs at law.

Before the commencement of the suit, the plaintiffs demanded of the defendant a conveyance of the title, held by him, under the deed to him and his wife ; but he neglected and refused to comply with their request.

The case was reserved for the advice of this court, as to the decree to be made.

*Hawley*, for the plaintiffs, contended, That the plaintiff was entitled to the relief sought, on the following grounds.

1. That the conveyance made was the result of *misrepresentation*, by the husbands, to the wives. On this ground alone, had the parties borne no such relation, had they been mere strangers, chancery would relieve.

2. That chancery will relieve, where there is no fraud, but where the parties act *unadvisedly ;* especially, where others, upon whom they rely, controul or influence them. These are cases where they misunderstand the effect of their own acts ; where, through misapprehension of the law, they adopt an instrument not adapted to the accomplishment of their intent ; where there is a mutual misapprehension or mistake of law. 1 *Sto. Eq.* 121, 3, 4, 5, 8. 133, 4, 5, 6. 142, 5., and cases cited. 2 *Sw. Dig.* 92. *Newl.* 432. 1 *Fonb. b.* 1. *ch.* 1. § 7. More especially will relief be granted, where the husband misleads the wife, who relies upon him, and indeed, cannot be said to be competent to act independently of him, especially, not to do a binding act.

3. That the *lapse of time* constitutes no objection. There has been no *laches* in fact, in Mrs. *Anderson ;* she never having discovered or suspected the mistake, until shortly before her death. No limitation runs against an *equitable* right, until the party is *apprised* of his right. 1 *Fonb. b.* 1. *c.* 4. § 27. & n. *Phalen* & al. v. *Clark* & al. 19 *Conn. R.* 421.

2 *Sw. Dig.* 233, 4. Mistake and fraud stand, in this respect, on the same ground. Besides, no laches is imputable to *married women*, especially as between them and their husbands. *Lynde* v. *Denison*, 3 *Conn. R.* 387. In this case, Mrs. *Anderson* could not, at any time, have instituted proceedings against her husband.

4. That the defendant can have no allowance for *improvements*. They were made by him, merely *as husband*, while (if he was guiltless of fraud) he believed the whole title to be in his wife. The husband can have no allowance for improvements thus made ; no principle can be found to warrant it. He must have made the improvements, either as husband, or as claiming to be owner in common with her. In the first case, he could have no allowance, for the reason above stated ; and the finding shews, that he did not consider himself owner, when they were made. If he did, he would not have acted *bona fide ;* for if he regarded himself as owner, he knew that he became so, through the mistake and misapprehension of his wife, caused by himself—by his own advice and assertion. He, of course, knew, that his title was *inequitable ;* and no one making improvements in land, thus obtained, by fraud or mistake, and held wrongfully, can be allowed for improvements. This would be so, even against a *stranger,* and one *sui juris.* Here, the wife, during all this time, was not only *ignorant* of the mistake, but incapable of acting. No right could have been acquired against her, even by a stranger ; certainly not, by her husband. This is not at all like those cases, where one, believing he has title, and acting *bona fide,* makes improvements, which the owner, knowing his rights, with power to prevent, stands by, and suffers him to go on, without disclosing his title.

*Dutton* and *Ferris*, for the defendant, contended, 1. That the mistake was merely a mistake of *law,* where there was no fraud, or want of good faith. Such a mistake will not be corrected, by a court of equity. 1 *Sto. Eq.* 111. *Wheaton* v. *Wheaton*, 9 *Conn. R.* 96.

2. That the parties deliberately executed this instrument, knowing what the terms of it were. In such a case, equity will not relieve. *Hunt* v. *Rousmanier's* admrs. 1 *Peters*, 13 to 17. 1 *Sto. Eq.* 126.

*Fairfield,*
June, 1851.

Stedwell
*v.*
Anderson.

3. That equity will not relieve, in any case of mistake—where such mistake is the consequence of neglect. 2 *Spence,* 754. 756. 757.

4. That the defendant has done all he agreed to do. He was merely passive in receiving the conveyance. It is not, therefore, a case, where the instruments do not carry into effect the agreement, so far as he is concerned.

5. That the defendant can hold the property in good faith, as a *gift* from his wife. The relationship of husband is as good and equitable consideration as the relationship of brothers and sisters.

6. That the defendant informed his wife, a year and a half before her death. She made no objection to him ; and her assent may be implied.

7. That he cannot be placed in as good a situation as before. He made *improvements* on the land.

8. That the claim is lost, by lapse of time She might have sued, at any time, in equity.

9. That the defendant is, at all events, entitled to the 300 dollars, which he has put upon the land.

WAITE, J. The rule that money paid or property conveyed, under a mistake as to the law, cannot be recovered back, although often repeated, is one not of universal or unqualified application. Exceptions to it, as a general rule, have often been made, and have received the sanction of courts of justice ; but the distinctions have not always been clearly defined, nor the reasons, in all cases, satisfactorily explained.

In a very recent case, we had occasion to enquire, under what circumstances, a party paying money through a mistake, as to his legal liability, might recover it back. *Northrop* v. *Graves*, 19 *Conn. R.* 548. And after a careful examination of the leading cases upon that subject, we held, that a party, who had paid money under a mistake, as to his rights and duty, which he was under no legal or moral obligation to pay, and which the party receiving it, had no right, in good conscience, to retain, might recover it back, in an action at law, whether the mistake was one of fact or of law.

Subsequent reflection has not led us to doubt the correct-

ness of that rule.  The same principle may be applied to the conveyance of property, as to the payment of money, although the mode of redress in the one case, may be different from that in the other.

Perhaps the rule more immediately applicable to the case under consideration, may be better stated in this manner. When property has been conveyed, through mistake, by deed, which the parties never intended should be conveyed, which the grantor was under no legal or moral obligation to convey, and which the grantee, in good conscience, has no right to retain, a court of chancery will interfere and correct that mistake, whether it arose from a misapprehension of the facts, or of the legal operation of the deed.

A party may be as much injured, by a mistake of the scrivener, in the language of the deed, arising from his want of skill in the law, as from a misdescription of the property conveyed, arising from his want of knowledge upon that subject.  And a person unskilled in the technical language of conveyances, might be as readily misled, in the one case, as in the other.

But where the conveyance was such as the parties intended it should be, and the grantee may, in good conscience, retain the property, although the grantor may have been mistaken as to the extent of his title, a court of chancery will generally refuse its interference.

It was upon a distinction of this kind, that the late case of *Wooden* & al. v. *Haviland*, proceeded.  18 *Conn. R.* 101. There, the scrivener, by mistake in drawing a mortgage deed, omitted a description of the notes in the condition, and the omission was not discovered, by the mortgagees, until some time after the execution of the deed; we held, that that mistake might be corrected.

But the mortgagor, in her cross-bill, set up a mistake, on her part, as to the extent of her title to the mortgaged premises, and prayed to be relieved from the mortgage. But as the mortgagees had done no act tending to mislead her, and had given up their debts against her father, and assumed and paid others, relying for their security upon the mortgage given by her, it was held not to be inequitable in them to retain their security; and that, consequently, she was not entitled to relief.

What are the facts, in the present case? Four sisters were the joint owners of a tract of land, which they and the husbands were desirous of having aparted to them in severalty. A division was mutually agreed upon, and one of the husbands undertook to prepare the deeds to carry that division into effect. By mistake, misapprehension and ignorance of the law, he inserted the name of each husband, as grantee with his wife, in the deed to her. The effect was, to give him an estate in fee in an undivided portion of the share to be conveyed to his wife.

It is found, that these deeds were, by mistake, misapprehension, and ignorance of the form in which they should be drawn, executed by the parties. There was no intention, on the part of any one of them, to convey to the husbands a greater interest than they were entitled to, by virtue of their marital rights.

Under a deed thus mistakenly drawn, and executed, the defendant took an estate in fee in an undivided share of the land intended to be conveyed to his wife. Had the deed been drawn in conformity to the intention of the parties, his whole interest in the property would have terminated upon her death, as she died without ever having had issue.

Upon what principle of justice or equity can he now retain the interest in the property thus conveyed to him? He has never paid any thing for the property, nor was it ever intended, by the parties to the conveyance, that he should take more than he would have had, if the deed had been made to her alone.

It was natural, that these married women should rely upon their husbands for directions as to the proper mode of carrying the partition into effect. One of the husbands prepared the deeds; and it is found, that when the discussion arose as to the propriety of inserting the names of the husbands, the defendant insisted, that without such insertion, the deeds would be good for nothing.

It is true, no distinction was made between the insertion of the names, as grantees or grantors; but it is obvious, that the enquiry must have been, whether it was proper to insert them, in the manner in which they were inserted in the deeds then prepared.

Now, if the defendant, in the claim which he made, intentionally misled his wife and her sisters in relation to the

deeds, it operated as a fraud upon her, and he cannot stand, for a moment, in a court of equity, upon his defence. On the other hand, if he laboured under the same mistake with the others, as it is found that he did, then his attempt to avail himself of that mistake, comes with a peculiarly ill grace from him.

*Fairfield,*
June, 1851.

Stedwell
*v.*
Anderson.

It is however said, that the parties have slept over their rights, for a period of more than twenty years; and that the defendant's wife never called upon him to rectify the mistake. But during the coverture, he was entitled to the use of the property, and there was nothing in the manner of that use, calculated to awaken suspicion that the deed was not as it should be; and it is found, that neither she, nor any of her sisters, had knowledge of the mistake, until about a year and an half before her decease, when the fact was communicated to her, by the defendant. It does not appear, that she ever complained to him; but it is found, that she and the sister to whom she communicated the information, were troubled about it.

We do not therefore think, there is any thing in the lapse of time, which varies the rights of the parties.

It is further claimed, that if the plaintiffs are entitled to the estate, the defendant is entitled to an allowance on account of the improvements which he has made. It is very clear, that if they had been made upon property wholly owned by her, he could sustain no suit to recover on that account. But as under the deed, he took an undivided portion of the estate in fee, when the plaintiffs call upon him to give up to them his share of the property, it seems to be no more than equitable, that they should allow his proportional share of the improvements, upon the principle that he who seeks equity, must himself do that which is equitable.

We therefore advise the superior court to decree in favour of the plaintiffs, as to the title to the property; and also to allow the defendant his proportional share of the improvements.

In this opinion the other Judges concurred.

Decree for plaintiffs;
Defendant allowed for improvements.