JOHN S. CANEDY & others *vs.* WILLIAM G. MARCY.

An heir's deed of his undivided share in certain land of his ancestor, " except the widow's right of dower," passes the reversion in the widow's third of the estate.

Under the *St.* of 1856, *c.* 38, this court has jurisdiction to reform a deed of real estate, upon clear oral evidence that it was not written according to the intention of the parties although the scrivener used the words which he intended.

Lapse of time since the execution of a deed is no objection to having it reformed in equity according to the real intention of the parties making it, if that intention has been acted upon by both parties, and by those claiming under it, until within a year or two.

Under the *St.* of 1856, *c.* 38, this court has jurisdiction in equity to reform a deed made before its passage.

BILL IN EQUITY, under *St.* 1856, *c.* 38, by the eight heirs at law of John Canedy, to reform certain deeds, under which the defendant claimed title to real estate of said John, who died intestate in 1835. Said heirs, in 1836, 1837 and 1845, respectively made deeds of their " undivided eighth parts of the real estate where the deceased last lived, except the widow's right of dower," and their grantee conveyed to one, who in 1848 conveyed to the defendant in fee the tract of land in question, with full covenants of warranty, " except the right of dower to the widow, and my right in the same."

Hearing before *Dewey*, J., who made a report thereof, stating the conveyances in detail, and the residue of which was as follows :

" The complainants alleged and contended that, in all of the above deeds, the reversionary interest of the children, in the land which might be set off to be held by the widow as dower, was intended to be reserved ; and that no one of the deeds was meant to convey more than a part or the whole of two undivided third parts of the farm ; leaving untouched the widow's dower, and the reversion of the heirs at law.

" It appeared in the case, that the dower of the widow was never legally set out to her ; but her enjoyment thereof, to the present time, had been under certain arrangements with the other parties, and under a practical division of the same ; the defendant occupying the other two thirds.

" The case was heard before a jury, upon the request of the defendant, upon the matters in fact in controversy between the parties. After hearing the evidence, it was agreed that the facts shown by the testimony, there being no contradictory evidence, should be reported to the full court.

" It was shown by the evidence, that the oral contract made by the respective parties, in each and all of the conveyances, was a sale of only two thirds of the premises, and did not embrace the reversionary interest of the heirs in the widow's dower land. This was the oral contract; and this was all that the respective parties, at the time of giving and receiving the deeds, understood was to be conveyed. Those who drafted the deeds also so understood the purpose of making the deeds, and intended to carry into effect this oral contract, in drafting the deeds. The evidence also showed that this was the view of his title, as held and acted upon by the defendant from the date of his deed in 1848 until within two or three years past; that he had repeatedly spoken of his title as being only the two thirds, and had applied to the heirs at law to purchase their reversionary interest in the remaining third part. It is not further contended, but that the real bargain was a sale limited to two thirds of the estate.

" It appeared in evidence, upon the inquiry of the counsel of the defendant, put to the draftsman of the deeds, and also to the respective grantors, that the words used in the deeds were the words intended to be used by them, and that in this respect there was no mistake or error; the error being that they supposed the words used would convey only two thirds of the premises, leaving in the heirs at law their rights in reversion to the remaining third held by the widow as her dower. The defendant insists that for this reason this bill should not be maintained.

" It further appeared in evidence that one of the complainants, as agent for the heirs at law, had, previously to the filing of the bill, urged the defendant to correct the error in the deeds, but the defendant absolutely refused so to do. It was proved that the defendant had knowledge, before taking his deed, that

his grantor claimed, under the deed to him, two thirds of the premises only.

" If, in the opinion of the whole court, this is a proper case for granting the prayer of the complainants, and ordering the defendant to reform his title deeds, or for other suitable relief, the court will so order, or make such other disposition of the case as may be proper."

This case was argued at September term 1858.

*W. Griswold,* for the defendant, contended that the bill could not be maintained for the following reasons :

1. The deed to the defendant gave him no title in the reversion expectant upon the widow's dower. *White* v. *Crawford,* 10 Mass. 183. *Bridge* v. *Wellington,* 1 Mass. 219. 4 Cruise Dig. tit. 32, *c.* 21, § 65.

2. The mistake, if there was any, was one of law and not of fact. Equity will not relieve against mistakes of law. *Irnham* v. *Child,* 1 Bro. C. C. 92. *Hunt* v. *Rousmanier,* 8 Wheat. 174. *Graves* v. *Boston Marine Ins. Co.* 2 Cranch, 430. *Bank of United States* v. *Daniel,* 12 Pet. 48. *Lyon* v. *Richmond,* 2 Johns. Ch. 51. 1 Story on Eq. §§ 111, 113.

3. The written contracts or deeds cannot be varied by oral evidence. *Irnham* v. *Child,* and *Hunt* v. *Rousmanier,* above cited. *Woollam* v. *Hearn,* 7 Ves. 211. *Higginson* v. *Clowes,* 15 Ves. 516. *Portmore* v. *Morris,* 2 Bro. C. C. 219. *Hare* v. *Shearwood,* 3 Bro. C. C. 168. *Grant* v. *Naylor,* 4 Cranch, 235. *Stackpole* v. *Arnold,* 11 Mass. 27. 1 Story on Eq. § 153. Parol evidence may often be used to resist, where it cannot be used to obtain a decree. *Dwight* v. *Pomeroy,* 17 Mass. 303. 2 Story on Eq. §§ 769, 770.

4. Equity will not relieve against such negligence or want of diligence as this case discloses. It is a case of inexcusable ignorance, and not one of mistake. *Penny* v. *Martin,* 4 Johns. Ch. 566. *Dwight* v. *Pomeroy,* 17 Mass. 303. *Bank of United States* v. *Daniel,* 12 Pet. 57. 1 Story on Eq. § 146.

5. The *St.* of 1856, *c.* 38, cannot apply to mistakes which occurred before its passage.

*C Allen,* for the plaintiff

Canedy & others *v.* Marcy.

SHAW, C. J.   This is a bill in equity, brought under the au‹ thority of the late statute extending the equity jurisdiction of this court to all cases of mistake and accident, to reform and correct certain deeds set forth in the pleadings.   It comes here upon the report of one of the judges of this court, from which the facts fully appear.

It appears perfectly well proved, if it is competent to prove it for such purpose by parol evidence, and we think it is, that the oral contract was, that the grantor was to convey, and the grantees to take, two thirds of the entire premises of which the intestate died seised, and to except the entire third part of the premises in which the widow particularly had dower, though it had not been assigned to her to hold in severalty ; that it was so understood by the conveyancer employed to draw the deeds ; that he intended so to draw it, and supposed that he did.   But it further appears from his testimony, that he used the words which he intended, but believed the description was such as not to include the reversion in the dower.

It also appears that the defendant, when he obtained his title from his grantor, knew that the grantor claimed the two thirds only, exclusive of the reversion in the dower, and that he considered that to be the extent of his title, and at times made proposals for the purchase of the reversion of some of the heirs, until within a year or two, since which he has denied their right, and refused to correct the mistake.

1. The first question is, whether here was any mistake.   Of this we think there can be no doubt, if the intention of the parties was, that this reversion should not pass.   The conveyance was of the interests of the heirs in the estate described, except the widow's right of dower.   This carried the whole estate sub‹ ject to the exception.   The widow's right of dower was a freehold estate for her own life in one third, and the residue included both the two thirds in possession, and the reversion in the dower.   Such was the legal effect of the description adopted.

2. We are therefore satisfied by the evidence that these deeds were made by the mistake of the scrivener, in preparing deeds which excepted only the widow's right of dower, when, under

the authority given him, and to accomplish his own intention, he should have so drawn the deeds as to except one certain undivided third part of the premises, being that part assigned, or reserved to be assigned to the widow, as her dower.

3. We are aware that a deed is very strong evidence of the intent of the parties, and at law cannot be questioned, but must be taken to be conclusive. But where, in equity, mistake of the parties is expressly charged and put in issue, equity will permit it to be inquired into, and, upon strong and satisfactory proof, to be corrected. The evidence must make it clear. Here we are of opinion that it is proved by such evidence, that the mistake was made and that the deeds did not conform to the oral contract, which they were intended to carry into effect. It is no answer to say that the scrivener used the words which he intended to use. It is the mistake of the parties to the deeds which we are to inquire into; and if they were misled by a misplaced confidence in the skill of the scrivener, it can hardly be said to be a mistake of law and not of fact on their part.

But we are of opinion that courts of equity in such cases are not limited to affording relief only in case of mistake of fact; and that a mistake in the legal effect of a description in a deed, or in the use of technical language, may be relieved against, upon proper proof. *Hunt* v. *Rousmaniere,* 1 Pet. 1. *Gillespie* v. *Moon,* 2 Johns. Ch. 596. *Stedwell* v. *Anderson,* 21 Conn. 139. *Oliver* v. *Mutual Commercial Marine Ins. Co.* 2 Curt. C. C. 299.

There are authorities also, especially the opinion of Chancellor Kent in Johnson's Chancery Cases, that such proof may be made by parol evidence. *Gillespie* v. *Moon,* just cited. Adams on Eq. (Amer. ed.) 168 *note.*

4. The court are of opinion that the defendant be required to execute and deliver to the plaintiffs, their heirs and assigns, a deed of release and quitclaim of all his right, title and interest in the reversion of one undivided third part of the estate, and that he and all persons claiming by, through or under him, be enjoined and prohibited from taking or claiming any right, title or interest in such reversion, against the plaintiffs or any persons claiming by, through or under them.       *Decree accordingly*