### LUSK v. PARMER et al.

No. 4855.

Court of Civil Appeals of Texas. Amarillo.

Feb. 21, 1938.

Rehearing Denied March 28, 1938.

Jno. A. Coffee, of Hereford, for appellant.

W. H. Russell, of Hereford, for appellees.

JACKSON, Chief Justice.

On December 29, 1930, Mina D. Jones, joined by her husband, A. M. Jones, in consideration of the sum of $5,320, evidenced by two notes, one for the sum of $1,600, due five years thereafter, and the other for the sum of $3,720, due on November 1, 1935, executed their deed for the purpose of conveying to Pauline Parmer in her separate right and as her separate estate the southwest one-fourth of section No. 35, township 25 north of range No. 2 east, in Deaf Smith county, Tex. The notes, secured by a vendor's lien retained in the deed, were executed by Pauline Parmer and her husband, B. B. Parmer, both of whom understood, intended, and believ-

ed that said quarter section, as conveyed, would be and constitute the separate property of Pauline; however, the deed failed to contain the recitations necessary to vest the title of said land in Pauline as her separate estate, and, according to its provisions, the legal presumption prevails that title was vested in the community estate of Pauline and her husband.

The record indicates that the Parmers took possession of the land, and on July 1, 1932, Pauline, believing that the deed from A. M. Jones and his wife vested in her as her separate property the title to the land, and in order to protect such title, in good faith, paid the vendor's lien notes with funds of her separate estate and secured a release of said notes and the lien in the name of herself and her husband.

On February 26, 1932, J. W. Lusk recovered a judgment in the district court of Deaf Smith county against B. B. Parmer for a community debt. On March 26th, thereafter, he had execution issued on said judgment and levied on certain personal property of B. B. Parmer, which was duly sold and a credit of $416.50, the net proceeds thereof, given on the judgment. The balance of $1,869.64 remained unpaid and the judgment so credited was duly abstracted on August 10, 1932, filed by the clerk, recorded in the abstract of judgment records, and legally and properly indexed.

On December 20, 1933, J. W. Lusk instituted this suit in the district court of Deaf Smith county against the defendants Pauline and B. B. Parmer to have his lien against the land in controversy adjudged valid and superior to any right, title, or interest of the defendants, to secure a foreclosure of his said lien, the issuance of an order of sale, and the property sold to satisfy his debt.

He also made certain other parties defendant, but they each disclaimed, and will receive no further mention.

Pauline Parmer and her husband answered, stated in detail how the quarter section of land was purchased and paid for, and that under the facts, it was her separate property and not liable for the debts of her husband, but, in the alternative, alleged, if mistaken as to the land belonging to her separate estate, that she claimed she was entitled to be reimbursed and to be subrogated to the lien retained in the deed from A. M. Jones and his wife to her, and to all rights, legal and equitable, reserved or created by said lien because she

had paid the debt secured thereby out of her separate funds.

By supplemental petition, J. W. Lusk urged as a defense to the right of subrogation the statutes of two and four-year limitations, Vernon's Ann.Civ.St. arts. 5526, 5527. In reply to the plea of limitation, the defendants pleaded coverture for Pauline.

The case was tried before the court on August 26, 1936, without the intervention of a jury, and judgment entered that Pauline Parmer was subrogated to the debt and lien evidenced by the vendor's lien notes which she had paid with her separate property; that the land be sold as under execution, and after payment of cost, from the proceeds Pauline Parmer receive the sum of $1,663, with interest from July 1, 1932; that the remainder be paid to J. W. Lusk in satisfaction of his debt, and any balance remaining be paid to B. B. Parmer, from which judgment J. W. Lusk prosecutes this appeal.

The attorney of appellee has not favored us with a brief and we accept the statement of the attorney of appellant to the effect that there is no material difference in the testimony relative to the nature of the title to the property introduced on this trial and that contained in the record on a former appeal in which we held that the land belonged to the community estate of the Parmers, and that B. B. Parmer was insolvent as early as December, 1931. Lusk v. Parmer et ux., Tex.Civ.App., 87 S.W.2d 790.

The appellant contends that the court erroneously held that Pauline Parmer, by paying, from the funds of her separate estate, the debt evidenced by the notes, was subrogated to the vendor's lien retained to secure the payment thereof, as she was a volunteer, for the reasons: (a) There was no evidence of any subrogation agreement; (b) she was a married woman, her separate estate was not legally liable for the community debt, and her intention was not to protect community property; (c) no equitable subrogation arose by such payment on account of her mistaken belief that the title was vested in her because such mistake was a mistake of law and not of fact.

We concede that the testimony fails to show any agreement by the terms of which Pauline Parmer was subrogated to the rights of the holders of the vendor's lien, but we do not agree that she had no inter-

est in the property and that no equitable assignment arose in her behalf subrogating her to the debt and lien evidenced by the notes she paid with her separate funds.

The record title to the quarter section of land was vested in the community estate and the debt paid by Mrs. Parmer was a community debt for which neither she nor her separate funds were legally liable. Had it been a debt on which her separate property was primarily liable, as she thought, there could have been no subrogation, but the payment of the notes would have vested the title to the property in her separate estate. Her purpose in paying the notes was obviously to protect property, the title to which she believed was in her separate estate, subject to the debt. She was mistaken in the character of the title and the extent of her interest in the land, but she did have a one-half interest therein because it belonged to the community estate of herself and husband subject to the debt. The record indicates that out of community funds about $700 had been paid on the notes, and, had she not paid the balance of the notes, the property would have been lost to the community estate on account of the financial condition of her husband, and hence to any claim of the appellant.

In 39 Tex.Jur. par. 27, p. 787, the author says: " * * * A surviving wife who has paid community debts cannot be held to be a mere intermeddler; and where she has paid such debts out of her separate estate, she will be subrogated to the rights of the creditor and may reimburse herself by taking property out of the community estate, provided this be done fairly and not to the detriment of the community estate."

This announcement is based on the holding in Jennings et al. v. Borton et al., 44 Tex.Civ.App. 280, 98 S.W. 445, writ refused.

Mrs. Parmer had a one-half undivided interest in the land and having in good faith paid the debt, although it was a community obligation, with her separate funds while her husband was living, but insolvent, we think of no reason why she was not subrogated to the rights of the owners of the notes, notwithstanding she was mistaken as to the title of the property and the interest she held therein.

In Pomeroy's Equity Jurisprudence, 2d Ed., Vol. 5, par. 2346, the writer says: "The second class of parties entitled to subrogation consists of those who, while not legally bound to pay, yet might suffer loss if the obligation is not discharged, and so pay the debt in self-protection. In this class are included subsequent incumbrancers paying off a prior incumbrance, and owners of property or of equities or partial interest therein paying off prior incumbrances. It would seem here as in the first class of cases that one acting in good faith in making his payment and under reasonable belief that it is necessary to his protection is entitled to subrogation even though it turns out that he had no interest to protect."

In 60 C.J. p. 719, par. 27, it is said: "Payments made in ignorance of the real state of facts cannot be said to be voluntary. So a person who has paid a debt under a colorable obligation to do so, that he may protect his own claim, or under an honest belief that he is bound, or who mistakenly but in good faith believes that he has an interest in property, to protect which he discharges a lien, will be subrogated." See, also, Minchew v. Hankins et al., Tex.Civ.App., 278 S.W. 306.

Under certain conditions an equitable assignment arises when a party pays the mortgage and the lien and debt are kept alive to protect such party. This result follows although there may be no assignment, written or verbal, and the securities not delivered, and sometimes when they were actually satisfied and released of record.

"This equitable doctrine, which is a particular application of the broad principle of subrogation, is enforced whenever the person making the payment stands in such relations to the premises or to the other parties that his interests, recognized either by law or by equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive, either wholly or in part, for his security and benefit." Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 3, par. 1211.

It is often very difficult to determine whether a mistake is one of fact or one of law, but in Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 2, p. 1374, the general rule is stated as follows: "Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property or contract or personal status, and enters into some transaction the legal scope and operation of which he correctly

apprehends and understands, for the purpose of affecting such assumed rights, interests or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact."

We have been cited to no Texas authorities and have found none deciding the question presented here by appellant, but in Livingstone v. Murphy et al., 187 Mass. 315, 72 N.E. 1012, 105 Am.St.Rep. 400, the Supreme Court of Massachusetts, in passing on a similar proposition, says: "'Private right of ownership is a matter of fact. It may be the result also of matter of law; but if parties contract under a mutual mistake and misapprehension as to their relative and respective rights the result is that that agreement is liable to be set aside as having proceeded upon a common mistake.' Lord Westbury, in Cooper v. Phipps, L.R. 2 H.L. 149, 170. And this is so although the mistake arises from an erroneous view of the legal effect of a deed. in the chain of title. Against such a mistake equity will relieve. Cooper v. Phipps, ubi supra; Baker v. Massey, 50 Iowa 399; Griffith v. Townley, 69 Mo. 13, 33 Am.Rep. 476; Pomeroy, Equity, § 849, and cases cited. See, also, Canedy v. Marcy, [79 Mass. 373], 13 Gray 373, 377."

In Busiere v. Reilly, 189 Mass. 518, 75 N.E. 958, 960, the court holds: "A mistake as to title is a mistake of fact, even though arising from an erroneous view of the legal effect of a deed." To the same effect is the holding in Williams v. Libby et al., 118 Me. 80, 105 A. 855.

■ The appellant urges as error the action of the court in holding that the right of subrogation was not barred by the four-year statute of limitation because the suit involved real estate; Mrs. Parmer was married in 1924; her coverture, under the record, was not a defense to such limitation; she paid the notes, to which she asserts she was subrogated, on July 1, 1932, but did not assert her claim to subrogation until August 17, 1936, more than four years after such payment and her cause of action on subrogation, if any she had, arose.

He relies on the holding in Barrett et al. v. Crump, Tex.Civ.App., 15 S.W.2d, 672, to support this contention, but, as we understand this record, the law announced in that opinion has no application to the facts involved in this case. The note for $1,600 was due December 29, 1935. The one for $3,720, payable out of one-half of the annual crops, was due November 1, 1935; hence, limitation could not be successfully urged against the subrogation pleaded until four years after the maturity dates of the notes paid by Mrs. Parmar. Garner et al. v. Black et ux., 95 Tex. 125, 65 S.W. 876; Hillyer et al. v. Westfall et al., Tex.Civ. App., 67 S.W. 1045; Platte v. Securities Inv. Co., Tex.Com.App., 55 S.W.2d 551; 103 A.L.R. 1182, annotations.

■ The appellant asserts that in any event under his judgment lien, which was duly recorded, abstracted, and indexed, he was a creditor under article 6627, R.C.S., and inasmuch as the record shows without dispute that he was without notice of the equitable right of subrogation claimed by Mrs. Parmer, he held the first and superior lien on the property and the proceeds from the sale thereof should be applied, after the costs were satisfied, first to the payment of his debt.

The testimony shows that at the time appellant had his judgment recorded and his lien fixed he had no notice, either actual or constructive, of the equitable subrogation asserted, but the record, in our opinion, does not make him a "creditor" under article 6627, which, so far as affects a disposition of this appeal, provides that bargains, sales, and other conveyances, if not recorded as required by law, shall be void "to all creditors and subsequent purchasers for a valuable consideration without notice" because Mrs. Parmer did not hold under any instrument subject to the registration statute, but held by virtue of an equitable assignment which could not be recorded.

In commenting on article 6627, in Cetti v. Wilson et al.; Tex.Civ.App., 168 S.W. 996, 997, the court held: "That article of the statutes was construed in Grace v. Wade, 45 Tex. 522, which decision has been uniformly approved in subsequent decisions of our Supreme Court and Courts of Civil Appeals. See McKamey v. Thorp, 61 Tex. 648; Hill v. Moore, 62 Tex. 610; Parker v. Coop, 60 Tex. 111; and other decisions cited in Rose's Notes of Texas Cases, vol. 2, p. 644. The rule established by those decisions is that a lien fixed by judicial process upon land without notice of an unrecorded deed is superior to such deed and that a subsequent purchase of the land, even with notice of the unrecorded deed would vest title in such purchaser to the exclusion of such deed; and that, too,

682

even though the creditor himself be the purchaser and the amount of the bid is credited upon the judgment rendered in his favor. But in those cases the court approved the doctrine announced in Blankenship v. Douglas, 26 Tex. [225], 226, 82 Am. Dec. 608, which decision has likewise been uniformly approved, that the registration statute above noted would not exclude an equitable title to the land as the same is not subject to registration."

 The general rule is that in the absence of notice to the contrary a person dealing with land may rely on the record title, but the law apparently is that a creditor, who for the purpose of collecting a debt fixes a lien on land by judicial process, does not, before the sale thereunder, have a superior right to the party who has acquired an equitable interest by having paid his money for such interest.

"'It seems to be well settled that a judgment lien on the land of a debtor is subject to every equity which existed against the lands' in the hands of the judgment debtor at the time of the rendition of the judgment. And courts of equity, it is said, will protect the equitable rights of third persons against the legal lien, and will limit that lien to the actual interest which the judgment debtor has in the estate.' [Blankenship v. Douglas, 26 Tex. 225, 82 Am. Dec. 608]." Parker v. Coop, 60 Tex. 111.

No execution had been levied on the land involved and no sale had thereof under appellant's judgment, and the record is conclusive that the only consideration he contemplated paying for the land was a release of or a credit upon his debt and judgment. Henry Ilse v. A. H. Seinsheimer, 76 Tex. 459, 13 S.W. 329; Johnson v. Darr, 114 Tex. 516, 272 S.W. 1098; First State Bank of Amarillo v. Jones, 107 Tex. 623, 183 S.W. 874, 876. In the last-cited case, the Supreme Court says: "A judgment lien holder is not in the same attitude as an innocent purchaser for value without notice. The latter has expended his money in good faith to the amount of the purchase price of the land, and is justly entitled to be held harmless. It is right that the loss under such circumstances should be visited upon the landowner whose negligence, in failing to give notice through the deed records of his ownership, occasioned the loss, rather than that it should fall upon the innocent purchaser who was without fault. The judgment lienholder is in a different attitude. He is not in any sense an innocent

purchaser. If his lien fails to attach, he loses nothing. His judgment still remains unimpaired in its full amount. In such a case, even though the owner of the land has been negligent in failing to provide a correct record notice of his title, still his negligence has not resulted in injury to the judgment creditor."

 Equity having subrogated Mrs. Parmer to the notes and lien given to secure the purchase money, she was entitled to enforce every right of the owners thereof, including the foreclosure of the principal obligations, notwithstanding the execution of the release. 39 Tex.Jur. p. 795, par. 35. Pomeroy's Equity Jurisprudence, 2d Ed., Vol. 5, p. 5203, par. 2351.

The debt and lien to which she was thus subrogated was, we think, without question, superior to the lien of appellant.

The judgment is affirmed.