## BERRY v. CHADWICK et al.

### No. 14030.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 9, 1940.

Rehearing Denied March 15, 1940.

Geo. M. Hopkins, of Denton, for appellant.

Davenport & Tipps and Bullington, Humphrey & King, all of Wichita Falls, for appellees.

DUNKLIN, Chief Justice.

This is a suit in trespass to try title to a tract of 755 acres of land, situated in Denton County, instituted by Pearl Chadwick against Irene Berry, and from a judgment in favor of the plaintiff the defendant has appealed.

The land was acquired by Lee Litsey, and was owned by him at the date of his death, on June 3, 1936. He was never married and died without leaving any will disposing of his estate. Mrs. Pearl Chadwick and Mrs. Cora McMakin were his sisters and only heirs. Mrs. Chadwick went to live with him on the property in controversy about two years prior to his death, and has remained in possession thereof since his death.

Robert H. Hopkins was appointed administrator of his estate on June 29, 1936, and on August 16, 1937, the probate court of Denton County entered an order authorizing the sale of this property, to pay debts due to the estate's creditors. No immediate action was taken with respect to this order, and Mr. Hopkins died at some time between August 16, 1937, and February 14, 1938, and on the date last noted, Alvin C. Owsley was appointed administrator de bonis non of the estate. Thereafter, on March 9, 1938, Alvin Owsley filed in the probate court a report of the sale of this property to S. C. Caruthers,

under and by virtue of the order of the probate court to sell the property, of date August 16, 1937. In that report of sale, it was recited that the property had been bid in by S. C. Caruthers for the consideration of $21,973.87, and that he is now ready and able to comply with his bid, with money to be acquired by him under and by virtue of the terms of his written agreement with the administrator, signed by the administrator and Caruthers, which was attached to the report of sale, as an exhibit, and made a part thereof. That exhibit recites an agreement by Owsley to sell and convey to Caruthers the property in controversy, subject to the approval of the court, for the sum of $21,973.87, subject to a prior lien held by the Federal Mortgage Bank, amounting to about $5,611, to be assumed and discharged by Caruthers; that the taxes on the property prior to 1938 were to be paid by the estate, but the taxes for the year 1938 should be paid by Caruthers, and that the rents for the year 1938 shall pass with the sale to. S. C. Caruthers.

Following those recitals are these stipulations:

"It is understood that the said S. C. Caruthers has made application to .The Travelers Insurance Company for a loan of Sixteen Thousand Dollars and the said application has been allowed subject to the approval of the title by the attorneys of said Insurance Company and the said Alvin C. Owsley has furnished to said attorneys an abstract of the title to said land for their examination and upon·its approval by the said attorneys the title will be accepted by the said S. C. Caruthers.

"It is understood that Cora McMakin, one ˙of the two heirs of Lee Litsey, deceased, has executed and placed in escrow a deed conveying to Mrs. Pearl Chadwick all of her interest in the estate of Lee Litsey, deceased, to be delivered and take effect upon the payment of six thousand dollars in cash and it is agreed that the said S. C. Caruthers shall pay to the said Cora McMakin the said sum of six thousand dollars and procure the delivery of said deed on ǫr before the fifth day of April, 1938.

"It is further agreed that upon the approval of the said sale the said Alvin C. Owsley shall procure a deed to be executed by the said Pearl Chadwick conveying all of her interest of every kind in said land to the said S. C. Caruthers to be delivered

contemporaneous with the deed executed by said administrator upon the payment of the purchase money for the said land.

"It is understood that Mrs. Pearl Chadwick is now occupying one of the houses on the land above mentioned as a home and that she shall be allowed a period of sixty days from the time the sale of said land is closed to procure another home and that at the expiration of said term of sixty days she will remove from said premises and deliver the quiet and peaceable possession thereof to the said S. C. Caruthers.

"The said sum of six thousand dollars to be paid by the said S. C. Caruthers to the said Cora McMakin for her interest in said estate is a part of the purchase money for said land and the balance of the purchase money shall be paid to the said Alvin C. Owsley."

On March 25, 1938, the probate court of Denton County entered an order approving the report of sale so made by the administrator, and the terms thereof, reciting that the administrator had filed a bond in the sum of $50,000, conditioned as the law requires, with good and sufficient sureties thereon, and was duly approved by the court, with directions that upon compliance by Caruthers with the terms of said sale, "said Alvin C. Owsley shall execute. and deliver a good and sufficient deed conveying to him the said several tracts of land above described.absolutely and in fee simple."

Thereafter, the quitclaim deed from Pearl Chadwick to S. C. Caruthers,˙ of date March 24, 1938, referred to in that exhibit, was executed and delivered to S. C. Caruthers, reciting a nominal consideration of $5 cash paid; and Mrs. McMakin executed a deed conveying all her interest to Mrs. Chadwick. A loan of $16,000 was then procured by Caruthers from the Travelers Insurance Company, as recited in the exhibit, and out of. the sum so borrowed, $6,000 was paid to Mrs. McMakin.

By deed of date March 28, 1938, Alvin C. Owsley, administrator, executed to S. C. Caruthers a deed conveying the property in controversy, for a recited consideration of $21,973.87 in hand paid, and the further consideration of the assumption by Caruthers of an unpaid balance of $5,627.44, owing to the Federal Land Bank of Houston, reciting that the deed was made under and by virtue of the order of the probate court, on March 19, 1938, ap-

proving the sale. That deed was duly filed of record March 28, 1938.

The undisputed evidence shows that Mr. Caruthers procured said loan for Mrs. Chadwick, in order to pay off the indebtedness on the land, and that he has never claimed any title in it in his own right at any time, and further, that Mrs. Chadwick has paid him the sum of $500 for his services in procuring the loan, in accordance with her agreement so to do, which was the only interest he had in the transaction; and that he has recognized Mrs. Chadwick as the owner of the land, ever since he purchased it.

On March 30, 1938, which was subsequent to the sale by the administrator to Caruthers, a written agreement was entered into by S. C. Caruthers and Pearl Chadwick, duly acknowledged by the parties thereto, reading as follows:

"The State of Texas, County of Denton.

"Whereas the several tracts of land belonging to the estate of Lee Litsey, deceased, were being sold under an order of the court, and Pearl Chadwick, the sister and most interested heir of the said Lee Litsey, was unable to purchase and pay for the same and at her special instance and request S. C. Caruthers has purchased and paid for said land with the understanding that he will hold the same for a reasonable time for the benefit of the said Pearl Chadwick and convey the said land to her upon payment of the amount he has paid for the land and a reasonable compensation for the risks he has encountered in buying said land; Now Therefore it is hereby agreed by and between the said S. C. Caruthers and the said Pearl Chadwick, a feme sole, that if and when the said Pearl Chadwick shall pay to the said S. C. Caruthers the money he has expended and an additional sum of five hundred dollars he will sell and convey the said land to the said Pearl Chadwick but if the said S. C. Caruthers shall sell the said land to some other person, at an advanced price satisfactory to said Pearl Chadwick the sum of five hundred dollars he shall be allowed and paid a commission in addition to of five per cent of the amount for which the said land is sold.

"Witness our hands at Denton, Texas, this March 30th, 1938.

"(Signed)     S. C. Caruthers.
               "Pearl Chadwick."

On June 5, 1938, the defendant, Mrs. Irene Berry, recovered a judgment against S. C. Caruthers, for $2,267.25, on his promissory note, in favor of the First National Bank of Louisville, in a suit originally filed by the Bank, in November, 1931. Mrs. Irene Berry became a successor in interest of the bank in that suit, and the bank has filed a disclaimer of any interest thereunder. That judgment was duly filed in the Abstract Records of Denton County, on June 28, 1938, but neither the bank nor Mrs. Berry's acquisition of the note was in any way induced by the ostensible ownership of Caruthers of the land involved in this litigation.

By deed dated September 8, 1938, filed for record September 17, 1938, Caruthers, by deed with warranty of title, conveyed the property to Mrs. Chadwick, subject to all the indebtedness then outstanding against it. It thus appears that that deed was acquired after Mrs. Berry's judgment had been filed in the Abstract Judgment Records of the County.

By proper assignments, it is insisted by appellant that testimony introduced to show a lack of consideration received by Mrs. Chadwick for the sale of the property, approved by the orders of the probate court, was incompetent and inadmissible, because it amounted to a collateral attack on the orders of the probate court approving and confirming the sale to Caruthers, which contention we believe is without merit.

From all the evidence introduced and noted above, we believe it clear that even though it be said that the order approving the report of sale and the sale made thereunder carried with it a sale of the legal title of both Mrs. Chadwick's and Mrs. McMakin's interest in the property, yet the same was held by Caruthers in trust for the use and benefit of Mrs. Chadwick, and the evidence offered to show that trust relation did not amount to a collateral attack on the order of the probate court in question.

McCampbell v. Durst, 73 Tex. 410, 11 S.W. 380, 384, was a suit by Mary J. Durst, widow, and three children of James H. Durst, deceased, to set aside certain deeds of conveyance executed by the administrator of the estate of James H. Durst to one Jordon, and by Jordon to Charles Looinskiald and John S. Campbell, attorneys and partners, who had represented the administrator in all proceedings per-

taining to the estate. The record showed that Mary J. Durst, as widow of the deceased, and for and in behalf of her three minor children, executed to that law firm a power of attorney, giving them authority to do anything necessary to the settlement of the estate, with an agreement that for those services, when rendered, they should be entitled to receive one-half of all moneys and one-half of all real estate that may be forthcoming to the grantors upon final settlement of the estate. Under such employment the attorneys, acting for the administrator, presented an application for an order of sale of 77,000 acres of land belonging to the estate, which was duly granted; also a report of sale of the land by the administrator, for an aggregate sum of $3,767.31, fourteen leagues of which was sold to Richard Jordon, who then made a quitclaim deed to it to William McCampbell, who had acquired from his partner all his interest.

Although all proceedings in the probate court pertaining to the sale were regular on their face, the court held that testimony showing that no consideration was paid for either of the deeds in question, and therefore the attorneys had failed to perform the services they had undertaken, was admissible, and that the suit did not constitute a collateral attack on those probate orders.

The court further said:

"The obvious purpose of this suit was to cancel the deeds which were executed in pursuance of the proceedings in the probate court, and to remove from plaintiffs' title the cloud cast thereon by the deeds, or any other claim of appellant to the land. These proceedings in the probate court, and every order and decree relating to the land in controversy, are specifically set out in the petition, and it is averred of each and all of them that they are fraudulent and void. These proceedings constitute a part of appellant's claim, and eventuated in the deeds, against both of which relief is directly sought by this suit. We think the suit is not collateral, but a direct proceeding to vacate the deeds, which may be done if the facts alleged be true, although the orders in probate stand. * * *

"The proceedings in the probate court were not void, and the court erred in so holding and in excluding them from the jury. * * *

"We think the court did not err in its construction of the contract entered into between appellant and his partner and the administrator and widow of James H. Durst. We think the contract admits of no other construction than that Looniskiald & McCampbell were to render all professional services necessary in litigating the title of the estate to the lands, and to defray all expense necessary to clearing up and perfecting the titles to the lands; to pay, compromise, or discharge, in some way, all debts established against the estate, as conditions precedent to their right to receive one-half of the assets of the estate. It was clearly proven that these conditions were not performed. The land having been conveyed to Jordon without consideration, he held the title in trust for the beneficiaries of the estate, and, the conveyance having been made to appellant without consideration, and with full knowledge upon his part of the title his vendor had, he was in no better position than Jordon would have been as defendant in the action."

That decision was cited with approval and followed by the Supreme Court in Johnston v. Stephens, 121 Tex. 374, 49 S.W.2d 431. Of like effect was the decision in Kreis v. Kreis, Tex.Civ.App., 57 S.W.2d 1107, in which both the above cases are cited.

In Stewart v. Profit, 146 S.W. 563, 564, by the Court of Civil Appeals, writ of error refused, Stewart claimed title to 5 acres of land under deed to him by one Kelsey, who had acquired title from Katie Bell under her contract that in consideration of his agreement to pay expenses of litigation, including employment and payment of a lawyer to defend a certain suit against Katie Bell for a 50 acre tract, she would convey to him one-half of all she recovered, and in which suit a judgment was rendered in her favor for 10 acres, one-half of which she then conveyed to Kelsey.

This was said in the opinion:

"Appellant, in connection with the judgment in the case of Kennedy v. Bell, offered testimony to show that Katie Bell in fact had no defense to offer to the suit, and that this fact was recognized by her attorneys, but that her attorneys appealed to attorney for Kennedy to let her have the 10 acres, here in controversy, on the ground that she was an old woman 70 years old struggling for an existence,

trying to get along by raising garden truck on this land, with no other means of subsistence, and that out of consideration for her needy situation, and not in recognition of her claim to any part of the land, her counsel admitting that she had none, plaintiff's attorney, for his client, the attorney also having an interest in the land, agreed that plaintiff would give her the 10 acres, and that to carry out this agreement the judgment was entered up without evidence offered. To this testimony appellees objected on the ground that the judgment was conclusive and could not be attacked collaterally, which was sustained and appellant excepted. Calvin Bell was not a party to this suit. The evidence, if true, showed that the land was in fact a donation or gift to Katie Bell, and therefore her separate estate, even if she was legally the wife of Calvin Bell. It did not impeach the conclusiveness of the judgment, nor was it, in any proper sense, an attack upon it. Looking to the substance instead of the form, it was, if these facts be true, as much a gift to Katie Bell as though judgment had been rendered in favor of Kennedy and he had afterwards made her deed without consideration other than regard for her needy circumstances. The evidence was improperly excluded, and the seventh assignment presenting the point must be sustained."

■ The purchase of the property by Caruthers with money which Mrs. Chadwick had enabled him to borrow from the Travelers Insurance Company, and under his agreement with her that he would purchase it in his name for her benefit and then convey it to her, with his disclaimer of title in her favor, clearly established an equitable title in her, subject to the mortgage lien executed by Caruthers to borrow the $16,000, and subject to the lien in favor of the Federal Land Bank of Houston, noted above, with the bare legal title in Caruthers. That the filing of the abstract of judgment in favor of defendant, Mrs. Irene Berry, did not create a lien on Mrs. Chadwick's equitable title, is well established by an unbroken line of decisions in this State. Hence, appellant's contention to the contrary is overruled.

In First State Bank of Amarillo v. Jones, 107 Tex. 623, 183 S.W. 874, 876, this was said:

"The judgment lien of Jones would only fasten upon the interest in the land which was actually owned by Roberts. It would not attach to a greater interest therein than Roberts owned in the land, even though the deed records erroneously disclosed in his favor a greater interest in the land than belonged to him. A judgment lienholder is not in the same attitude as an innocent purchaser for value without notice. The latter has expended his money in good faith to the amount of the purchase price of the land, and is justly entitled to be held harmless. It is right that the loss under such circumstances should be visited upon the landowner whose negligence, in failing to give notice through the deed records of his ownership, occasioned the loss, rather than that it should fall upon the innocent purchaser who was without fault. The judgment lienholder is in a different attitude. He is not in any sense an innocent purchaser. If his lien fails to attach, he loses nothing. His judgment still remains unimpaired in its full amount."

In Garrison v. Citizens' Nat. Bank of Hillsboro, Tex.Civ.App., 25 S.W.2d 231, land was conveyed for the sole purpose of securing a loan; the grantor remained in possession of the land. It was held that the equitable title remained in the grantor and was not subject to a recorded abstract of judgment against the grantee. To the same effect was the decision of the Commission of Appeals, adopted by the Supreme Court, in Payne v. Bracken, 131 Tex. 394, 115 S.W.2d 903, 904, in which the opinion in the Garrison case, just noted, was cited with approval, and in which this was said: "It is well settled that the lien of a judgment creditor by virtue of filing abstract of his judgment extends only to such title as the debtor has, and is subject to all equitable rights of third persons."

Of like effect were the decisions in Lusk v. Parmer, Tex.Civ.App., 114 S.W.2d 677, and Edwards v. Beals et al., Tex.Com.App., 271 S.W. 887.

Appellant cites the opinion of this court in Diltz v. Dodson, Tex.Civ.App., 207 S.W. 356, in support of his contention that Mrs. Chadwick's title was subordinate to Mrs. Irene Berry's duly recorded judgment lien. As shown in that opinion, that was a suit by Mrs. Diltz for a writ of injunction to restrain the sale of 320 acres of land under execution, to satisfy a judgment rendered against her husband, W. L. Diltz, in favor of R. W. Rogers, and which judgment had been duly ab-

864

stracted in records of deeds of Taylor County, where the land was located. According to allegations in her petition, and evidence introduced, she claimed title, in her own separate right, through a deed to her from her son, W. L. Diltz, Jr., who had acquired the same through deed to him by his father, W. L. Diltz, Sr., defendant in the judgment, one month and a day prior to date of the judgment in favor of Rogers; but those deeds were not filed for record until two months and two days after the filing of the abstract of the judgment in favor of Rogers; and plaintiff introduced no evidence to show that at the time the judgment lien attached, Rogers had notice of the unrecorded deeds under which plaintiff claimed title, and since plaintiff had failed to discharge the burden to show such notice, those deeds were void as against Rogers, who with his fixed judgment lien was a creditor, by virtue of the provisions of Art. 6824 (now Art. 6627), Rev. Civ.St. And being void, those deeds could not affect the judgment lien. In answer to appellant's contention that the judgment lien attached only to such extent as the defendant, W. L. Diltz, Sr., had in the property, we said that while that was the rule under the common law, it had been abrogated by our registration statutes. What we there said had reference to the legal title standing in the name of W. L. Diltz, Sr., at the time the abstract of judgment was filed, creating a judgment lien on all the real estate then owned by him and upon all real estate he might thereafter acquire, under and by virtue of Art. 5449, Rev.Civ.St., Vernon's Ann. Civ.St. art. 5449, and the apparent legal title evidenced by the deeds under which plaintiff claimed. That that announcement had no reference to an equitable title, but only to a legal title, clearly appears in subsequent portions of the opinion, to the effect that if plaintiff had alleged facts establishing an equitable title in her and had supported such allegations by sufficient proof, such equitable title would not have been affected by the judgment lien because it was not subject to registration statutes; but that the record reflected an absence of such pleading and proof.

For the reasons noted, all assignments of error are overruled, and the judgment of the trial court is affirmed.