### LANGE v. BINZ.  (No. 7504.)

(Court of Civil Appeals of Texas.  San Antonio.  Feb. 17, 1926.  Rehearing Denied - March 17, 1926.)

**1. Appeal and error &⊂⊃907(3).**

Trial court's findings of fact are appellate court's conclusions of fact, where case comes to Court of Appeals without statement of facts.

**2. Equity &⊂⊃7.**

Mistake of law will not relieve party acting under such mistake, unless it was induced by inequitable conduct.

**3. Limitation of actions &⊂⊃13—Joint maker of note, who deceived payee into believing that he was bound by extension of time, held estopped to plead limitations.**

Joint maker of note, who did not sign agreement for extension of time but allowed payee to believe that he was obligated by signing of such agreement by another, *held* estopped from pleading limitations as to such debt.

Appeal from District Court, Bexar County; Robert W. B. Terrell, Judge.

Suit by Mary Anna Binz against Frank Lange and others. From a judgment for the plaintiff, named defendant appeals. Affirmed.

Denman, Franklin & Denman and E. H. Lange, all of San Antonio, for appellant.

R. L. Edwards and Haltom & Haltom, all of San Antonio, for appellee.

FLY, C. J.  This suit was instituted by appellee against the San Antonio Milling Company, a private corporation, and B. J. Lange and Frank Lange, on two promissory notes signed by all the parties, dated, respectively, January 2, 1913, and July 1, 1918, the first named in the sum of $2,852.88 and the second in the sum of $3,855.70. The first note was due 5 years after its date, and the second 2 years after its date. It was alleged that the first note was indorsed, "This note is extended for two years by agreement of both parties from January 2, 1923"; that payment of the second note was extended for two years to July 1, 1924. The cause was heard by the court without a jury, and judgment rendered in favor of appellee against all the parties for $7,645.54.

[1] The case comes before this court without a statement of facts, on the findings of fact of the trial judge, which must necessarily be the conclusions of fact of this court. The court found that the two promissory notes were executed jointly by the San Antonio Milling Company, B. J. Lange, and Frank Lange; the one dated January 2, 1913, being executed to Henry N. Binz, and the one of date July 1, 1918, to Mrs. Mary Anna Binz. The interest was regularly paid on the notes; the first for $2,852.88, becoming due on January 2, 1918, the second for $3,855.70, due on July 1, 1920. On the back of the first note was an agreement to extend payment as follows:

"This note is extended for two years by agreement of both parties from date of Jan. 2d, 1921.         [Signed]  S. A. Milling Co.,
                     "By B. J. Lange."

There was another extension on the same note of two years from January 2, 1923. On the second there was written: "This note extended for two years longer after expiration." That was signed, as were the other extensions. On July 23, 1920, before making the extensions, Frank Lange had sold his one-half capital stock of the Lange Soap Company to his brother B. J. Lange; a part of the consideration being that B. J. Lange would pay the debts of the two brothers, among them the two notes in question. Appellee had no knowledge of the agreement between the brothers, or that Frank Lange had sold his interest in the soap company. B. J. Lange and the soap company became insolvent in the spring of 1924. The court further found:

"At the times of the execution of said notes and writing of the entries on back thereof, showing payments of interest, and at the times said memoranda of extensions of times of payment were written on the backs of the notes, the S. A. Milling Company was a corporation, duly incorporated under the laws of Texas, its stock being owned, one-half by B. J. Lange, and one-half by Frank Lange. At all such times F. Lange was president and B. J. Lange secretary of said corporation.

"The writings on the backs of the notes with reference to extending times of payments were made under the following circumstances: The note of date January 2, 1913, was about to become barred by the statute of limitation. The plaintiff, knowing this fact, went with her daughter, Mrs. Lizzie Ackerman, and her son-in-law, J. A. Ackerman, to the soap factory conducted under the name of Lange Soap Company, when Mr. Ackerman saw Mr. Frank

Lange and informed him that Mrs. Binz, plaintiff, who was waiting in an automobile, wished to see him, and, upon Frank Lange's meeting Mrs. Binz, she told him she wanted a new note, and Frank Lange stated that B. J. Lange would fix it up all right. Mr. B. J. Lange came out to the automobile, spoke to Mrs. Binz, and was told that Mrs. Binz wanted a new note, Frank Lange being present, and B. J. Lange told Mrs. Binz it would be sufficient to write it on the back of the note. Mrs. Binz handed the note to B. J. Lange, who went inside to the office (Frank Lange remaining at the car) and there wrote on the back of the note the following: 'This note is extended for two years by agreement of both parties from date of Jan. 2d, 1921. S. A. Milling Co., by B. J. Lange'—and then returned to the automobile and in the presence of Frank Lange handed the note to Mrs. Binz with the statement, 'Now it is all right.' Frank Lange did not have the note in his hand, and never knew what extension memoranda was put on the back of the note. The plaintiff and her daughter and her son-in-law each read the 'extension,' and knew Frank Lange had not signed his name to the same; but all then believed the extension as written protected Mrs. Binz against limitation as to all of the makers of the note. If she had not believed the extension of the note as written would be binding upon all signers of the note, she would not have accepted it. Frank Lange did not intend that the extension as written should apply to him or in any way bind him. He knew that Mrs. Binz thought it was binding upon him.

"The second extension on the back of this note was written by B. J. Lange and delivered to Mrs. Binz in the absence of F. Lange.

"The second note of date July 1, 1918, had the extension written on its back in these words: 'This note extended for two years longer after expiration. S. A. Milling Co., by B. J. Lange.' This was written by B. J. Lange and delivered to Mrs. Binz, the plaintiff, with the representations of B. J. Lange made in the presence of Frank Lange under the same circumstances, purposes, and intention as was the first note, except as to time.

"The plaintiff knew that Frank Lange did not sign the extensions, but did not know that Frank Lange would claim he was not bound thereby until a short time before these suits were filed.

"The plaintiff is the owner of the notes sued upon. There was no confidential or fiduciary relationship between the plaintiff and B. J. Lange and F. Lange, or either of them, except an acquaintance of many years, and the fact that she thought them to be honest."

Under the facts, the district court held that Frank Lange was estopped from pleading limitation on the two notes, and estoppel as to Frank Lange is the sole question presented by the record.

The facts show that appellee knew nothing as to the transfer of the soap property by Frank Lange to B. J. Lange, and knew nothing of the assumption by the latter of payment of her two notes. Frank Lange knew that she was ignorant of the arrangement between the brothers, and knew that appellee believed him to be bound to her for the debts when she approached him and asked for a new note. At that time Frank Lange, in spite of any agreements between him and his brother, was undoubtedly bound to appellee on the two notes as a principal. Appellee, when told by Frank Lange that B. J. Lange would fix it up all right, believed, as he intended she should believe, that the extension proposed by B. J. Lange would bind the same parties to the same extent as the notes themselves had done. She knew that B. J. Lange had signed the note for the milling company and for himself, and believed that he could and would fix the extension so as to bind the same parties. She knew that the "S. A. Milling Co., by B. J. Lange" alone was signed to the extensions, but believed the extensions were "all right," as both the brothers had told her they would be. She would not have accepted the extensions if she had not believed all the parties were bound, and Frank Lange "knew that Mrs. Binz thought it was binding upon him." Yet, knowing this, he opened not his mouth, but allowed her to accept the extensions, believing that he was bound. In so doing he was guilty of fraud as fully as though he had told appellee that he was bound on the notes although his name was not signed to the extensions. If there was any mistake as to law or fact, it was made by appellee and not by the brothers. They knew what the effect of the extensions had, at least upon the liability of Frank A. Lange, and there seems to have been a deliberate attempt upon the part of B. J. Lange to exempt himself from liability by signing the name of the corporation alone to the extensions. There was and is no escape from the facts, and that proposition is in effect admitted by appellant when he seeks to evade responsibility by the plea that appellee and her daughter and son-in-law at the time saw how the extensions were signed and knew that the name of appellant was not on it, and that it was a mistake of law upon the part of appellee when she deemed Frank Lange bound by such extensions.

[2] It is the general rule that a mistake of law, pure and simple, will not relieve a party acting under such mistake. As said in section 842, Pomeroy's Eq. Jur.:

"Where a party with all the material facts, and without any other special circumstances giving rise to an equity in his behalf, enters into a transaction affecting his interests, rights, and liabilities under an ignorance or error with respect to the rules of law controlling the case, courts will not, in general, relieve him from the consequences of his mistake."

The general rule is a good one, and is founded upon the proposition that all persons, of course of sound mind, are presumed to know the law, and there would be no security as to legal rights and no stability about judicial decisions if ignorance of the law could be advanced to excuse injudicious or foolish action. There must be a rule, and

that of ignorantia juris non excusat has been found less productive of wrong in the affairs of life than would an opposite rule. In the application of the rule there has been some contrariety of opinion. Some eminent judges have held that the maxim is confined to mistakes as to the general rules of law, but has no application to mistakes as to private legal rights. This construction of the rule is, however, denied by other authority. It may be stated to be well settled that a mistake by a party as to the legal effect of an agreement which he executes, or as to the legal result of his act or contract, will not always prevent relief in a court of equity. The mistake of law must not have been induced by any elements of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed, or of other inequitable conduct in the transaction. A mistake of law, caused by the act, language, or culpable silence of another, will not be permitted to ripen into gain by that other in a court of equity. As said by Pomeroy:

"Whatever be the effect of a mistake pure and simple, there is no doubt that equitable relief, affirmative or defensive, will be granted when the ignorance or misapprehension of a party concerning the legal effect of a transaction in which he engages, or concerning his own legal rights which are to be affected, is induced, procured, aided, or accompanied by inequitable conduct of the other parties. It is not necessary that such inequitable conduct should be intentionally misleading, much less that it should be actual fraud; it is enough that the misconception of the law was the result of, or even aided or accompanied by, incorrect or misleading statements, or acts of the other party. When the mistake of law is pure and simple, the balance held by justice hangs even; but when the error is accompanied by any inequitable conduct of the other party, it inclines in favor of the one who is mistaken. The scope and limitations of this doctrine may be summed up in the proposition that a misapprehension of the law by one party, of which the others are aware at the time of entering into the transaction, but which they do not rectify, is a sufficient ground for equitable relief. A court of equity will not permit one party to take advantage and enjoy the benefit of an ignorance or mistake of law by the other, which he knew of and did not correct." Pomeroy Eq. Jur. § 897.

The text is well sustained by decisions. Holt v. Gordon (Tex. Civ. App.) 176 S. W. 902; Sanford v. Weller (Tex. Civ. App.) 189 S. W. 1011; Bank v. Cleland (Ky.) 77 S. W. 176, 719; Berry v. Ins. Co., 30 N. E. 254, 132 N. Y. 49, 28 Am. St. Rep. 548; Bank v. Arndt, 65 S. W. 1052, 69 Ark. 406; Hunt v. Rousmanier's Adm'r, 1 Pet. (26 U. S.) 1, 7 L. Ed. 27.

[3] The facts found by the court show that appellant stood by silent while appellee was accepting the extensions as his act as well as that of his brother and the corporation, and he thereby was guilty of fraud and conceal-ment, and thereby deceived appellee. As said by Judge Moursund, for this court, in the cited case of Sanford v. Weller:

"If he knew or believed that the instrument drawn by him had a different legal effect, he failed, as found by the jury, to inform Weller of the true effect of the contract. The failure to speak under such circumstances has often been held to constitute such inequitable conduct as will enable the other party to take advantage of a unilateral mistake."

The proposition is well supported by other Texas decisions. Moreland v. Atchison, 19 Tex. 303; Ramey v. Allison, 64 Tex. 697; Culbertson v. Blanchard, 15 S. W. 700, 79 Tex. 486.

The facts show that Frank Lange, knowing that B. J. Lange, who had done more than he had in connection with the execution, had the confidence of appellee, and that she believed him to be honest, and he told her that he would fix it all right. He wrote the extension and placed it in the hands of appellee with the assertion that it was properly drawn. Frank Lange must have known that his name was not signed to the paper, because the court found that he did not intend that the extension should apply to him or in any way bind him, although he knew that Mrs. Binz thought he was bound. He did not undeceive her. She knew that she had loaned over $6,000 of her money to the two brothers and their corporation; she knew that it must have been used for their use and benefit; she knew that Frank must have used his part of it; and common sense and reason would show that she did not wish to lose one of the chief principals on her notes and did not intend to do so. Frank Lange, however, had a different intention, and neither he nor his brother revealed to appellee that Frank Lange had sold out his interest in the soap company to his brother. Under the circumstances, it was the duty of appellant to speak. It was a material fact that he concealed. He knew that she was ignorant of the fact that he had endeavored to shift the responsibility for his debts to his brother; he knew that she was ignorant of the fact that there was no intention to bind him by the extension; and, it was his duty to disclose the situation to her. On the other hand, he told her his brother would fix it all right, and he knew that meant to her that the parties to the contract would be the same. As said by the great English judge, Lord Eldon, after stating, in Turner v. Harvey, Jacob, 169, the right of a party to maintain his silence:

"A very little is sufficient to affect the application of that principle. If a word, a single word, be dropped which tends to mislead the vendor, that principle will not be allowed to operate."

The very contract itself, which was in the making in its essential nature, was intrinsically fiduciary, and necessarily called for per-

fect good faith and full disclosure, without regard to the intention of the parties. Pom. Eq. Jur. § 902.

The findings of fact sustain the conclusion of the trial judge that appellant, in equity and good conscience, is estopped from pleading limitations as to the debt due by him. His conduct was such as to cause appellee to believe that he was bound on the extensions. He sat calmly by when he knew appellee had been lulled into security, and waited until he thought limitation had run, and then proclaimed that he was not liable. We quote, as sustaining this cause, the clear language of Lord Denman in Pickard v. Sears, Eng. C. L. Rep. vol. 53, p. 117, which is quoted and approved in Love v. Barber, 17 Tex. 312:

"The rule of law is clear that when one, by his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring, against the latter, a different state of things, as existing at the same time."

The proposition rings with truth, justice, and equity, and, as said by Judge Lipscomb in the cited Texas case:

"This rule is much to be admired for its simplicity, its briefness, and it yet being expressive of the whole doctrine on the question."

Under its application the man who has misled another by his language, action, or conduct, to the damage of that other, will not be permitted to escape the consequences of the concealment and deceit practiced by him under the shelter of the maxim that ignorance of the law does not excuse any one. Ignorance of the law, fed and stimulated by language or unjust silence, will not be allowed to profit when it is endeavored to be used to avoid the performance of righteous contracts and obligations.

The judgment will be affirmed.