**OLD REPUBLIC INSURANCE COMPANY, INC.,**
Appellant,

v.

**Elvirn FULLER, Appellee.**

No. 06–95–00071–CV.

Court of Appeals of Texas,
Texarkana.

Argued Jan. 30, 1996.

Decided Feb. 23, 1996.

Rehearing Overruled March 26, 1996.

John R. Mercy, Christy P. Paddock, Atchley, Russell, Waldrop & Hlavinka, Texarkana, for appellant.

Lynn S. Patton, Patton, Nix, & Young, Longview, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Old Republic Insurance Company appeals a judgment setting aside a compromise settlement agreement of a worker's compensation claim filed by Elvirn Fuller. The company contends that the trial court's conclusion that Fuller did not ratify the agreement was incorrect as a matter of law, or in the alternative, was against the great weight and preponderance of the evidence. Because we conclude that Fuller ratified the settlement agreement, we reverse the judgment and render judgment that Fuller take nothing.

Elvirn Fuller injured his back on July 11, 1990, when he fell through a drain cover while working as an employee at Pilgrim's Pride Corporation. As a result of his injuries, Fuller missed one week of work, for which he received $189.00 in worker's compensation benefits. When he returned to work the following week, Pilgrim's Pride reassigned him to light duty to accommodate his injury. He worked in this new position for almost three years, until a supervisor asked him to fill in performing a more strenuous job for an employee who was absent. While doing so, Fuller reinjured his back. Due to the pain arising out of this second incident, Fuller was unable to report to work after February 16, 1993.

Fuller then retained an attorney, John T. Burton, to pursue a worker's compensation claim. On October 6, 1993, Burton informed Fuller by letter that Old Republic had offered to settle the claim for a lump-sum payment of $30,000.00. In the letter, Burton recommended that Fuller accept the offer. Fuller then went to Burton's office and told Burton that he would not agree to the settlement because he believed the claim was worth more. Burton told Fuller that in that case, the claim would have to go to trial and Fuller would have to wait for any potential recovery. Fuller said that he was willing to do so.

On December 5, Fuller received in the mail a copy of a compromise settlement agreement of his claim. The copy showed that a settlement of $30,000.00 had been approved by the Texas Workers' Compensation Commission on November 15, 1993. The settlement also granted Fuller three years' unlimited medical treatment under the direction of Dr. Troyce Williams. Burton's signature was on the form, and in the space marked "signature of claimant," Fuller's name was signed, with the initials "J.B." directly under it. The form was also signed by Sheila Littleton, an adjustor with Crawford & Company, administrator for Old Republic.

Fuller telephoned Littleton to inquire about the form he had received. Littleton told him that he should contact his attorney. Fuller repeatedly attempted to contact Burton, but was unable to reach him. Eventually, he found out that Burton's office had closed. In January 1994, Fuller learned that Old Republic had issued a settlement check made jointly payable to him and Burton and that Burton had endorsed and cashed the check at NationsBank in Tyler.

After retaining another attorney, Fuller contacted NationsBank in an attempt to obtain the check proceeds it had paid Burton. NationsBank agreed to pay Fuller $22,500.00, representing his share of the settlement, in exchange for Fuller releasing NationsBank of any further liability in connection with payment of the check. The remaining $7,500.00 represented Burton's attorney's fee. On May 13, 1994, Fuller signed the requested release, completed an affidavit stating that the original check bore a forged endorsement of his name, and received pay-

ment from NationsBank. Fuller then spent the entire amount of this payment, primarily to satisfy debts he had incurred since leaving work.

Sometime during 1994, Fuller began receiving medical treatment at Old Republic's expense under the direction of Dr. Troyce Williams, as provided by the settlement agreement. Prior to that time, Fuller had been receiving treatment from a chiropractor rather than a physician.

On September 30, 1994, Fuller, represented by a third attorney, filed the present action to set aside the compromise settlement agreement. In a bench trial, the court found that Fuller neither consented to nor ratified the agreement, and ordered that it be set aside.

■ Old Republic concedes that Fuller was not informed of, and did not consent to, Burton's settlement of his claim. The company contends, however, that Fuller ratified the settlement by his conduct after he became aware of the agreement and challenges the trial court's conclusion of law to the contrary.

■ When specific findings of fact and conclusions of law are filed and a statement of facts is before this court, we review the legal conclusions drawn from the facts found to determine their correctness. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds, Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890, 894 (Tex.1991). The question of ratification of a contract may be determined as a matter of law if the pertinent evidence is uncontroverted or uncontrovertible. *Sawyer v. Pierce,* 580 S.W.2d 117, 123 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

■ A compromise settlement agreement is a contract, and its construction is governed by the legal principles applicable to contracts generally. *Stevens v. Snyder,* 874 S.W.2d 241, 243 (Tex.App.—Dallas 1994, writ denied); *In re J.T.H.,* 630 S.W.2d 473, 476 (Tex.App.—San Antonio 1982, no writ). If a person who has fraudulently been made a party to a contract continues to receive benefits under the contract after he becomes aware of the fraud, or if he otherwise conducts himself in such a manner as to recognize the contract as subsisting and binding, he thereby affirms the contract and waives his right of rescission. *Daniel v. Goesl,* 161 Tex. 490, 341 S.W.2d 892, 895 (1960); *Rosenbaum v. Texas Bldg. & Mortgage Co.,* 140 Tex. 325, 167 S.W.2d 506, 508 (1943); *Spangler v. Jones,* 797 S.W.2d 125, 131 (Tex. App.—Dallas 1990, writ denied). An express ratification is not necessary; any act based upon a recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it has the effect of waiving the right of rescission. *Rosenbaum,* 167 S.W.2d at 508.

■ The critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the facts of the prior transaction and his actions in light of such knowledge.[1] *Land Title Co. v. F.M. Stigler, Inc.,* 609 S.W.2d 754, 756 (Tex.1980). Ratification can occur if the party, at the time of his allegedly ratifying acts, has knowledge of all material facts pertaining to the prior fraudulent transaction. *Rourke v. Garza,* 530 S.W.2d 794, 805 (Tex.1975); *Vessels v. Anschutz Corp.,* 823 S.W.2d 762, 764 (Tex. App.—Texarkana 1992, writ denied); *Sawyer,* 580 S.W.2d at 122. In contrast, a par-

1. Counsel for Fuller contends that an essential element of ratification is the intention of giving validity to the earlier act. *Motel Enters., Inc. v. Nobani,* 784 S.W.2d 545, 547 (Tex.App.—Houston [1st Dist.] 1990, no writ). As formulated in *Nobani,* this principle has very little support in Texas law, and we believe it to be susceptible to misinterpretation and misapplication. A party's intent is indeed important in determining the question of ratification, but not because the party must possess intent to ratify. Rather, the party must perform a voluntary, intentional act which is inconsistent with an intention of avoiding the prior agreement. *Daniel v. Goesl,* 161 Tex. 490, 341 S.W.2d 892, 895 (1960); *Rosenbaum v. Texas Bldg. & Mortgage Co.,* 140 Tex. 325, 167 S.W.2d 506, 508 (1943); *Sawyer v. Pierce,* 580 S.W.2d 117, 122–23 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Bennett v. Mason,* 572 S.W.2d 756, 759 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.); *see also Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n,* 885 F.2d 266, 270 (5th Cir. 1989) (applying Texas law).

ty's lack of knowledge concerning the law is irrelevant to the issue of ratification, unless such a mistake of law causes a mistake of material fact. *See Davis v. Nueces Valley Irrigation Co.*, 103 Tex. 243, 126 S.W. 4, 7 (1910); RESTATEMENT (SECOND) OF AGENCY § 91 cmt. d (1958).

Old Republic argues on appeal, and offered evidence at trial, that when Fuller contacted the company after learning that his claim had been settled, he did not complain of the fact that the settlement had been reached, but only that he had not received any money from it. Old Republic thus maintains that Fuller ratified the settlement agreement by failing to object to it at that time. Fuller, however, testified at trial and contradicted this account, and it was thus not incorrect as a matter of law, nor against the great weight and preponderance of the evidence, for the court to conclude that Fuller did not ratify the settlement by his communications with Old Republic. *See Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275–76 (Tex.App.—Amarillo 1988, writ denied).

Although the evidence at trial was thus conflicting with regard to Fuller's statements once he learned that his claim had been settled, there was no dispute among the parties concerning his conduct thereafter. Fuller retained an attorney to help recover his share of the completed settlement. He then received the money and spent it. He also began receiving medical treatment according to the terms of the settlement agreement. Throughout this entire course of conduct, Fuller was aware of Burton's fraudulent execution of the settlement agreement. By electing to receive the benefits of the agreement, with full knowledge of its fraudulent nature, Fuller ratified the settlement and forfeited his right to object to it. *See Rosenbaum*, 167 S.W.2d at 508; *Sawyer*, 580 S.W.2d at 122–23. The trial court's conclusion to the contrary was incorrect.

We reverse the trial court's judgment and render judgment that Fuller take nothing by virtue of this suit.

GRANT, Justice, concurring.

I fully concur with the majority opinion that a mistake of law is not grounds for avoiding a ratification. As the court held in *Davis v. Nueces Valley Irrigation Co.*, a ratification, made with full knowledge of the material facts, is sufficient, without reference to knowledge or lack of knowledge of the law. 103 Tex. 243, 126 S.W. 4 (1910).[2] There are some exceptions to that general rule, but none are applicable here.

As set forth in RESTATEMENT (SECOND) OF AGENCY § 91 (1958):

> Knowledge of the legal effect of the affirmance [ratification] is not material; nor is knowledge of the legal effect of facts material, except where a mistake of law causes a mistake of a material fact, such as a mistake as to ownership.

In the present case, the mistake of law urged is lack of knowledge of possible legal remedies. This happened at a time when Fuller was duly represented by his second counsel and had full opportunity to explore the possible remedies with that attorney.

Certainly, Fuller's experience with his first attorney had unfortunate consequences—unfortunate for both him and the general confidence of the public in the legal profession. Fraud perpetrated by the first attorney was not only on Fuller, but also on Old Republic Insurance Company as the payor of the settlement check. The company issued the check in good faith, believing the settlement agreement was properly signed. The check was issued to the attorney and Fuller, as payees, thus making it nonnegotiable without both signatures.

It must be remembered that Old Republic did not participate in the fraud that was perpetrated by the attorney selected by Fuller. While the evidence is undisputed that Fuller did not sign the settlement agreement or the check, there is no evidence that Fuller ever objected to Old Republic about the terms of the settlement.

The dissent contends the amount lost by Old Republic could be deducted from another

---

**2.** 3 TEX.JUR.3D *Agency* § 98 (1980) cites this case for the proposition that "where the principal knows all the material facts, it is not necessary that he know also the legal effect thereof."

settlement or judgment; however, that would depend upon there being another settlement or judgment against the insurance company in an amount in excess of the initial settlement. Otherwise, Old Republic is not in a position to recover. If the settlement is to be set aside, Old Republic has a right to be restored to its position before the settlement.

The dissent takes the position that Old Republic lost nothing by Fuller taking the benefits of the settlement because that was what the company had bargained for in the first place. One of the main factors for settling any lawsuit is to avoid the risk of a higher judgment at trial and avoiding the expense of having to try a case. This is exactly what Old Republic lost. Under the dissent's theory, Old Republic should still have to try the case, taking the risk and expense, but at the same time be out all of the funds that it paid to settle the case. This is not equitable.

It would be bad precedent to allow a party being fully represented by an attorney to accept the funds from a settlement and then to say that he should not be bound by the acceptance because he did not understand the legal ramifications.

CORNELIUS, Chief Justice, dissenting.

I cannot agree that we should overturn the trial court's findings in this case. The insurance company had the burden to prove by competent and sufficient evidence that Fuller ratified the fraudulent settlement of his worker's compensation claim by accepting benefits from it. The trial court's finding that Fuller did not ratify the settlement amounts to a failure to find that the insurance company met its burden of proof, and in my opinion Fuller's actions do not show that the trial court's failure to find ratification was against the conclusive evidence or against the great weight and preponderance of the evidence.

The evidence is undisputed that the settlement was made against Fuller's express wishes by the fraud of his attorney and the forgery of his signature, and that Fuller objected to the settlement when the lawyer's secretary told Fuller that his claim had "been settled already." There is sufficient evidence, both circumstantial and direct, to support a conclusion that when Fuller sought and recovered the money from the bank that had illegally cashed the check, he believed the fraud against him was a *fait accompli* that he was powerless to undo, and he was only trying to make the best of a bad situation by getting back the money that had been illegally taken from him. The evidence can also support a conclusion that Fuller was unaware that he could effectively do anything about the fraudulent settlement until he saw his present attorney, and on his advice, filed suit to set it aside.

Acceptance of the benefits of a fraudulent transaction operates as a ratification of the transaction only if the defrauded person, at the time of his allegedly ratifying acts, had full knowledge of all aspects of the fraudulent transaction and intended to give validity to the fraudulent act. *Motel Enterprises, Inc. v. Nobani*, 784 S.W.2d 545 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Sawyer v. Pierce*, 580 S.W.2d 117, 123 (Tex.Civ.App.— Corpus Christi 1979, writ ref'd n.r.e.). If Fuller thought it was too late to do anything about the fraud and was just trying to salvage what he could from a bad deal, it could not be said that he intended to ratify the fraud by taking the benefits.

Although the general rule is that equity will not grant relief from a mistake of law, that rule applies to the general rules of law and does not apply to a person's private legal rights or duties. As stated in POMEROY'S EQUITY JURISPRUDENCE, quoted with approval by the court in *Lusk v. Parmer*, 114 S.W.2d 677 (Tex.Civ.App.—Amarillo 1938, writ ref'd):

> "Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights ... either of property or contract or personal status ... equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact."

*See also Columbian Nat'l Fire Ins. Co. v. Dixie Co–Op. Mail Order House*, 276 S.W. 219 (Tex. Comm'n App.1925, judgm't adopted); *Lange v. Binz*, 281 S.W. 626 (Tex.

Civ.App.—San Antonio 1926, no writ); *Altgelt v. Gerbic,* 149 S.W. 233 (Tex.Civ.App.—San Antonio 1912, writ ref'd); 14 TEX.JUR.3D *Contracts* § 97, at 154 (1981); 3 POMEROY'S EQUITY JURISPRUDENCE § 849a (5th ed. 1941).

Moreover, even if Fuller could be said to have been acting under a mistake of law rather than fact when he accepted benefits from the "settlement," his mistake destroyed any intent on his part to voluntarily ratify or approve the fraud, and without the intent to ratify, regardless of what motivates that intent, there is no ratification.

I do not believe we should sanction the fraud that was perpetrated on Fuller, when the law gives him a distinct remedy by which to correct that fraud, and when he has offered to make the insurance company whole if he recovers his rightful benefits. The insurance company will not be mistreated if this settlement is set aside and Fuller later recovers less than the original settlement. If that happens, the insurance company will just be restored to the consequences of the original settlement, which it voluntarily made and is vigorously defending in this suit. The only adverse effect of setting the "settlement" aside would be that the insurance company would be subjected to the risk and expense of defending Fuller's claim. Equity has never demanded that a person seeking equity offer to reimburse the other party for the consequences of losing the advantage of a favorable judgment, *Jackson v. Mares,* 802 S.W.2d 48 (Tex.App.—Corpus Christi 1990, writ denied), or for the expenses that may be incurred as the result of a new trial. *See United Beef Producers, Inc. v. Lookingbill,* 532 S.W.2d 958, 959 (Tex.1976).

Failure to afford a litigant the remedy equity provides in a case like this brings discredit on the law and causes the public to lose faith in the judicial system's ability to bring redress to those unfortunate citizens who have been defrauded by the very ones who were supposed to be the guardians of their legal rights. We should not place our imprimatur on such a perversion of justice.

The insurance company did not meet its burden to prove that Fuller had full knowledge of all aspects of the fraud or that, by accepting the money he thought had been forced upon him by a fraudulent settlement, he intended to ratify the fraud. I would defer to the trial court's findings of fact and affirm the judgment.