### In re UNITED STATES BRASS CORPORATION, Debtor.

No. 94–40823–S.

United States Bankruptcy Court, E.D. Texas, Sherman Division.

March 20, 2002.

James P. Muenker, Andrews & Kurth, L.L.P., Dallas, TX, Paul O'Connor, Kasowitz, Benson, Torres & Friedman, New York City, for Brass Trust.

Stephen D. Spivey, Barry R. Rorex, Spivey & Rorex, Ocala, FL, for movants.

## MEMORANDUM OPINION

DONALD R. SHARP, Bankruptcy Judge.

Now before the Court is the Motion To Enforce Settlement Agreement ("Motion") filed by certain claimants represented by Stephen D. Spivey ("Spivey") and Barry R. Rorex ("Rorex") whose claims are classified as Class 5 plumbing claims under Article IV, Section 4.1(e) of the Fourth Amended Plan of Reorganization confirmed in this case ("Movants"). This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

The Court confirmed the Plan Proponents' Fourth Amended Plan Of Reorgani-

zation Proposed By The Debtor, Eljer Industries, Inc. And Eljer Manufacturing As Modified (the "Plan") in this case by an order entered on February 24, 1998 ("the Confirmation Order"). On March 19, 1998,the Plan became effective. Accordingly, the documents authorized and approved under the Plan, including the Brass Trust Agreement, ( filed of record with the Court on January 15, 1998), were executed and delivered (the "Plan Documents") and the initial plan funding occurred. Pursuant to the Plan, the Brass Trust was established to assume control of certain of the Debtor's assets and certain funds. The duties of the Brass Trust included, inter alia:

> (iv) to liquidate and resolve plumbing claims under the ADR; (v) to make distributions to the holders of allowed plumbing claims under the Plan, and (vi) to prepare and make available to the debtor, the proponents, any settling parties, and holders of claims periodic reports regarding the results of the Brass Trust's operations.

*Summary of the Plan, Section X(C)(5)(b).*

Appendix I to the Plan establishes the Alternative Dispute Resolution procedure to which Section X(C)(5)(b)(iv) refers for the treatment of Category 5 plumbing claims of Movants. As a result of unsuccessful ADR, Movants and the Brass Trust voluntarily participated in a mediation, the result of which was the Settlement Agreement executed on August 16, 2000 by and between The Brass Trust and the Category 5 plumbing claimants represented by Spivey and Rorex that is the subject of the Motion before the Court ("Settlement Agreement").

A dispute between the parties arose when The Brass Trust allegedly notified Movants that they would not allow Movants to submit more than 3,000 Claim Verification Forms ("CVF") nor allow Movants to correct any errors or provide supplemental information to any CVF after the February 12, 2001 deadline set by the Settlement Agreement. Spivey and Rorex filed the Motion requesting that the Court compel the Brass Trust to recognize the 3,542 [1] claims filed, review each and every claim for its sufficiency, pay up to a maximum of 3,000 qualifying claims and require the Brass Trust to accept supplemental information, if necessary.[2] The Brass Trust filed an objection to the Motion asking the Court to deny the relief requested. The matter came on pursuant to an expedited setting after which it was taken under advisement following a short period in which to file briefs.

### JURISDICTION

This Court expressly retained jurisdiction over the subject matter of the Motion pursuant to Article XV of the confirmed Plan and the order confirming the Plan. The Bankruptcy Court has jurisdiction to clarify and enforce its own orders under 11 U.S.C. § 105(a) and is the best court to do so. *Cites omitted.*

### DISCUSSION

The Brass Trust contends that it is not required to review claims filed after the

---

1. 3,613 claims have been filed according to the Response.

2. "Movants contend that the clear understanding of the parties allows them to file more than Three Thousand (3,000) claims but limits the number of claims that the Brass Trust must pay to a maximum of Three Thousand (3,000). Although Movants have filed Thirty–Five Hundred and Forty–Two (3,542) claims under the Settlement Agreement, Movants expect some claims to be disqualified and only expects The Trust to pay up to Three Thousand (3,000) qualifying claims." *Motion at pp. 3–4.*

first 3,000 because the universe of claims contemplated during the mediation and settlement negotiations was confined, by Movants' repeated representations, to a number no greater than 3,000 claims. The Movants contend that the 3,000 number limits the number to be *paid*, but not the number to be reviewed or that are eligible for payment insofar as certain of the first 3,000 claims filed become ineligible for payment thus making other claims eligible. In other words, Movants argue that it is the obligation of The Brass Trust pay *no less* than 3,000 claims and The Brass Trust believes it is bound to pay *no more* than 3,000 under any circumstance, but, may possibly, pay fewer claims than the 3,000 ceiling.

██ A settlement agreement is a contract, and its construction is governed by legal principles applicable to contracts generally. *Montanaro v. Montanaro*, 946 S.W.2d 428 (Tex.App.—Corpus Christi 1997) citing to *Old Republic Ins. Co. v. Fuller*, 919 S.W.2d 726, 728 (Tex.App.—Texarkana 1996, writ denied); *Stevens v. Snyder*, 874 S.W.2d 241, 243 (Tex.App.—

Dallas 1994, writ denied). *See also, Nuno v. Pulido*, 946 S.W.2d 448, 451 (Tex.App.—Corpus Christi 1997, no writ); *Old Republic Ins. Co. v. Fuller*, 919 S.W.2d 726, 728 (Tex.App.—Texarkana 1996, writ denied). An unambiguous contract is to be construed by a court as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex.1983); *Ortega–Carter v. American Intern. Adjustment Co.*, 834 S.W.2d 439, 442 (Tex.App.—Dallas 1992, writ denied). A contract is ambiguous if its meaning is uncertain or doubtful or it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393–94.[3] The terms of the Settlement Agreement call for it to be construed and interpreted in accordance with the laws of the State of Texas.[4]

The Court has considered the pleadings, the evidence, the argument of counsel and the record in this case and has determined that the Settlement Agreement is too vaguely written to be enforceable. The contested clause is ambiguous and reasonably susceptible to more than one meaning. *Coker, Ibid.* The parties presented this case as a dispute over whether the

---

3. Whether a contract is ambiguous is a question of law to be decided by a court by looking at the contract in its entirety in light of the circumstances present when the contract was entered..... Only where a contract is first determined to be ambiguous may the court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument. *National Union Fire Ins. Co. v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex.1995); see also *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 147–48 (Tex.App.—Houston [1st Dist.] 1986, no writ)(affidavit regarding intent of parties to an agreement inadmissible if agreement determined to be unambiguous). *Donzis v. McLaughlin*, 981 S.W.2d 58, 61–62 (Tex.App.—San Antonio 1998).

4. Courts should strictly construe a provision in a contract against the party inserting the language. *Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109 (Tex.

1978). However, the terms of the agreement indicate that it was the product of collaboration between the parties such that it should not be construed against any party by virtue of that party's participation in the drafting of the agreement. *Settlement Agreement at Para. 8.* Moreover, the express terms of the Settlement Agreement indicate that the "Agreement and [its accompanying] Release contain the entire agreement between the Parties... [t]here are no other understandings or agreements, verbal or otherwise in relation thereto, between the Parties except as expressly set forth." *Settlement Agreement at Para. 9.* The Court applies the foregoing integration clause in considering the weight to be given the copy of the mediator's handwritten memorandum attached as Exhibit "A" to the Motion. The Settlement Agreement also includes a severability clause, should it be determined that any provision of the agreement is unenforceable or invalid. *Ibid at Para. 5.*

terms of the Settlement Agreement require The Brass Trust to review the 3,452 claims filed and pay the first 3,000 claims that meet the criteria established by agreement (claimant's position) or whether the terms require The Brass Trust to review the first 3,000 claims filed and limit payment of any or all of the 3,000 that meet the conditions established under the Settlement Agreement (the Trust's position). There is a fatal flaw in the language of the Agreement that renders it ambiguous and unenforceable to the Court.

The opening Recital of the mediated Settlement Agreement portends the dispute that followed and is now before the Court:

> "WHEREAS, the Claimants' Attorneys purport to represent Claimants who allegedly hold one or more Plumbing Claims (as defined in the Plan) against the Brass Trust (collectively, the *"Claims"*) relating to approximately 3,000 total units (collectively, the *"Property"*) ...".[5]

The disputed provision of the Settlement Agreement before the Court is located in Section 1, entitled "Payments To Claimants". It is the "heart" of the agreement:

> ...the Brass Trust hereby agrees to pay the total sum of Nine Hundred and Forty Dollars ($940.00 US) per unit (the *"Settlement Payment"*), not to exceed a total of Three Thousand (3,000) units for all Claimants, for units as to which the following conditions are completed by February 12, 2001: ....

A recitation of the conditions follows. The Settlement Agreement then states:

> For purposes of calculating the total number of units referenced above, yard service lines (limited to 2 claims with up to 15 lines each) and multi-unit apartment projects are included in the total number of units, but are specifically excluded from the relief provided in this Agreement.....The Brass Trust's obligation to pay Claims under this Agreement shall cease for units which have not complied with the terms of this Agreement by February 12, 2001.

*Settlement Agreement, Section 1.*

■ The problematic term is not "3000 claims" as parties to the controversy suggest. Rather, it is the use of the term "unit" which is undefined in the Settlement Agreement, the Plan, the Confirmation Order, the Appendix I to the Plan or the Brass Trust Agreement that renders the Settlement Agreement unenforceable by this Court. The Court notes that until the final line of Section 1, the term "unit" rather than the term "claim" is used in the Settlement Agreement as opposed to the use of the term "claim" employed throughout Spivey and Rorex' Motion and the Brass Trust's Response. It is clear from the aforementioned verbiage in the Settlement Agreement that the Motion and Response *misstate* the controversy before the Court, insofar as a "claim" may include more than a single "unit" and a Claimant may seek payment for more than a single unit (i.e. "... not to exceed a total of Three Thousand units for all Claimants, for units as to which etc...." and "Plumbing Claims

---

5. The Court is of the opinion that this language (specifically the words "purports" and "approximately") indicates that from the outset neither party to the agreement had a defined idea of the number of claims constituting the subject matter of the Settlement Agreement. Two possible conclusions can be drawn from the language: either there was no meeting of the minds between the parties, as The Brass Trust's Post–Hearing Brief argues, or both parties to the Settlement Agreement were well aware that they were dealing with a plastic number of claims. The answer to the question is meaningless, however, because it will not affect the outcome of the dispute.

... relating to approximately 3,000 units ...".). Stated another way, the Agreement does not measure any party's obligations or benefits in terms of claims but in terms of units. The agreement states the dollar value to be paid on a per unit basis; represents that Rorex and Spivey represent claimants who hold claims relating to 3,000 total units and provides that the settlement payment does not exceed a total of 3,000 units for all claimants. Indeed, Section 1 includes a discussion of how to calculate units ("For purposes of calculating the total number of units....") and that section ends with the following sentence: "The Brass Trust's obligation to pay Claims under this Agreement shall cease for units which have not complied with the terms of this Agreement by February 12, 2001." From the use of the two terms disparately in the same sentence in the Settlement Agreement, the Court concludes the term "unit" is not a synonym in the Settlement Agreement for the term "claim".[6]

Thus, the Court must conclude, as Movants aver, that the Settlement Agreement does not limit the number of *claims* to be *reviewed* to 3,000. Res ipsa loquitur: the Settlement Agreement contemplates only two obligations of the Brass Trust: payment to claimants and agreement to perform any and all necessary acts and execution of documents necessary to carry out the provisions of the document. *Settlement Agreement, page 4, Sec. 12.* Review of claims is necessary to payment of claims. Regardless, the Court finds from the evidence adduced at trial and the record, the Settlement Agreement is too ambiguous to be enforceable. The parties' failed to define the term "unit".[7] The Court cannot require payment of $940.00 per "unit" absent information as to what comprises a "unit", and how a "unit" relates to a claim. It is clear from the settlement agreement that the obligation of the Brass Trust is measured in terms of units and not claims. It is clear that the parties felt that the attorneys in

---

**6.** The testimony supports this assumption. Mr. Spivey's examination of Mr. Rorex included the following question: "... was it your responsibility to review claims filed by multiple unit owners?". *Transcript of hearing at p. 33, ll, 21–22.* The recitals in the beginning of the Settlement Agreement define "Claims" as "relating to approximately 3,000 total units (collectively, the 'Property')". Also, in *Plaintiff's Ex. I*—correspondence from the Brass Trust to Spivey & Rorex, dated January 30, 2001 illustrates that the two terms appear to be used with two distinct referents in the mind of the author. At paragraph 1, line 1, the letter begins: "it was agreed that you would file claims under the agreement on behalf of not more than 3,000 units." Similarly, Defendant's Exhibit "F", the Brass Trust Claim Verification Form refers to properties, structures and units (single and multi-family) but fails to define the term unit. The CVF does define the term "polybutylene plumbing system".

**7.** It is a basic principle of contract interpretation that there must be a degree of certainty

as to the terms of the contract for it to be enforceable by the court. *E.g. See, 17A Am. Jur.2d Contracts § 196 (1991)* {"The degree of definiteness and certainty required has been variously stated. It is said that it must be possible to ascertain the full meaning with reasonable certainty, [*internal cites omitted*] or that the obligations of the parties must be reasonably certain. [*internal cites omitted*] The terms of a contract must be complete and sufficiently definite to enable the court to determine whether it has been performed, [*internal cites omitted*] and the terms and conditions are not sufficiently definite unless the court can determine therefrom the measure of damages in the case of a breach. [*internal cites omitted*] The agreement must be certain and unequivocal in its essential terms either within itself or by reference to some other agreement or matter. [*internal cites omitted*] In addition to a definite promise, the subject matter of the agreement must be expressed in such terms that it can be ascertained with reasonable certainty. [*internal cites omitted*]."}

this proceeding represented claimants holding claims relating to 3000 units. Under any set of circumstances, the Brass Trust would have no obligation to pay for more than 3000 units whether or not that encompasses one or 3000 claims. The obligations simply cannot be measured by reference to claims when the agreement measures them by the undefined term "unit." It is not the burden of the Court to provide the definition or measure of a "unit", nor may the Court infer such meaning absent further information. Analysis of the "four corners" of the document clearly indicates that a "unit" is not a "claim": but there is insufficient information as to what a unit is or to indicate that the parties had a mutual understanding as to what the term "unit" refers. A contract is ambiguous only when the face of the instrument leaves genuine uncertainty as to which of two or more meanings is the proper one. If only one reasonable meaning emerges, it is not ambiguous. *Austin Hardwoods v. Vanden Berghe*, 917 S.W.2d 320, 322 (Tex.App.—El Paso 1995) *[reh. overruled] citing to Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154 (1951) and *Reyna v. Gonzalez*, 630 S.W.2d 439, 441 (Tex.App.—Corpus Christi 1982, no writ). Here, several alternative meanings could be inferred respecting the term "unit"—no one meaning is more reasonable than the other. The Court is unwilling to assume or infer that "unit" refers to a Brass Polybutylene System because "Brass Polybutylene System" is a defined term under the Plan. *Plan at 1.1(j)*. The Court is unwilling to assume or infer that "unit" refers to a particular real property site or ownership interest (such as a mobile home, recreational vehicle or single family dwelling) because those have been referred to as "structures" in the CVF. *See Defendant's Ex. "F"*. The Court is cognizant that the term "unit" may be a well known and agreed upon term of art or a term of the industry, but that critical bit of information has not been provided to the Court and the Court will not construe it at random. Neither the Compromise Settlement Agreement, The Fourth Amended Plan of Reorganization, as Modified, the Order on same, the Release attached to the Settlement Agreement, the ADR documents attached as Appendix 1 to the Plan, the evidence adduced at trial nor the pleadings pertinent to this matter reveal to this Court what the measure of a "unit" is to enable the Court to enforce the Settlement Agreement and payment of "units" at $940.00 each. Therefore the Court must deny the Motion and declare the Settlement Agreement unenforceable, for were the Court to merely strike the ambiguous clause, the remainder would be but rhetoric: the ambiguous clause is the heart of the Settlement Agreement. An order will be entered accordingly.