Petition for Writ of Mandamus Denied and
Memorandum Opinion filed August 11, 2010

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00193-CV



 

In Re Connie Kristen Clayton,
Relator



 



ORIGINAL
PROCEEDING



WRIT OF MANDAMUS



MEMORANDUM
 OPINION

On March 2, 2010, relator Connie Kristen Clayton
filed a petition for writ of mandamus and, on March 4, 2010, a supplemental
petition for writ of mandamus in this Court.  See Tex. Gov’t Code Ann.
§22.221 (Vernon 2004); see also Tex. R. App. P. 52.  In the petition, Clayton
asks this Court to compel the Honorable William T. McGee, visiting judge of the
Probate Court of Galveston County, to (1) set aside his March 2, 2010 order granting
the motion to enforce a mediated settlement agreement; and (2) order the
parties to return to mediation.  We deny the petition.  

Background

            The
underlying case involves a dispute over the Estate of Ronald D. Russell, Sr. 
Clayton is Ronald Russell’s daughter and the executrix of the estate.  Real
party in interest, Kay Merrill Russell (“Russell”), is Ronald Russell’s wife
and Clayton’s stepmother.  Clayton and Russell signed a mediated settlement
agreement (“MSA”) regarding the distribution of the estate on October 1, 2009.  The
MSA provided, among other terms, that (1) Clayton would own 100 percent of
Mangum Russell, LLC; (2) Russell would own 100 percent of SJC Enterprises,
Inc.; (3) Mangum Russell, LLC (as landlord) and SJC Enterprises, Inc. (as
tenant) would enter into a five-year lease; (4) the parties would establish an
escrow account for repairs; (5) Clayton would pay Russell $80,000 by October
31, 2009, or by the date on which the lease was signed, whichever occurred
earlier; and (6) except for terms spelled out in the MSA, all terms under the
Texas Real Estate Commission would apply. 

            The
parties scheduled the closing for October 31, 2009.  Before the scheduled
closing, Russell’s counsel, David Brewer, tendered the documents necessary to
effectuate the closing to Clayton’s counsel, Margaret Hindman, for review.  The
parties extended the October 31 closing date to November 5, 2009, to provide Clayton
additional time to obtain the $80,000 she was to pay Russell pursuant to the
MSA.  On November 4, 2009, in response to Brewer’s inquiry about the proposed
lease agreement, Hindman replied that Clayton would not attend the closing the
next day because the property needed repairs; Clayton needed additional time to
obtain the proceeds for the $80,000 payment; and no escrow agent had been
found.[1] 


            Brewer
responded that he would consult with Russell about the issues Hindman raised
and concluded, “Please note that we are ready, able and willing to proceed with
the closing on the final settlement of this litigation as scheduled.”  

            Brewer
wrote Hindman on November 9, 2009, asserting that Clayton was (1) insisting on
additional terms not contained in the MSA; and (2) refusing to abide by the
MSA’s clear terms.  Brewer stated:  “There are no conditions given in the MSA
to the Lease being finalized, and we expect Mrs. Clayton to fulfill her
agreement in the MSA immediately.”  Brewer concluded that “if we are unable to
reschedule an agreeable time to close ALL matters agreed to in the MSA and
actually do so by November 17, 2009, my client will be forced to seek the
court’s assistance in enforcing the MSA signed and agreed to by all parties.” 

            On
December 18, 2009, Russell filed a motion to enforce the MSA contending that
Clayton had failed to comply with the terms of the MSA.  At the January 6, 2010
hearing on the motion to enforce, Clayton asked the trial court to order the
parties back to mediation to “hammer out the details.”  In its January 6, 2010
order on Russell’s motion to enforce the MSA, trial court ordered Clayton to
execute the lease agreement, the escrow agreement, and the written consent of
shareholders that were tendered by Russell within 15 days of the order.  The
trial court further ordered Clayton to pay Russell’s counsel $7,500 in
attorney’s fees for bringing the motion to enforce the MSA.  Finally, the order
provided that, if Clayton failed to comply with the order, upon notice and
hearing, she would be found in contempt for failing to comply with the order
and would be removed as executrix of the estate, and a third party
administrator would be appointed for performing the acts necessary to
consummate the MSA.  

            Claiming
that the January 6, 2010 order impermissibly added terms and conditions to the MSA,
Clayton filed a motion for rehearing on January 14, 2010 requesting that the
court order the parties to return to mediation pursuant to the agreement.  Also,
on January 14 and 21, 2010, Hindman sent Clayton’s suggested changes to the
lease agreement, the escrow agreement, and unanimous written consent of
shareholders to Brewer.  

            On
January 15, 2010, Clayton filed a motion to stay enforcement of the January 6,
2010 order.  The trial court granted the motion to stay and a hearing was set
for January 29, 2010.  Two days before the hearing, Russell filed an amended
motion to enforce the MSA and a response to Clayton’s motion for rehearing.  In
the amended motion, Russell argued the MSA should stand on its terms as the
lease, with a blank lease form signed by the parties to supply “any and all
terms” “except for the terms spelled out herein,” as agreed to in the MSA. 
Russell further agreed to execute both the escrow agreement and written consent
of shareholders as revised by Clayton.  

            At
the January 29, 2010 hearing, Clayton again requested that the trial court
order the parties to return to mediation.  The trial court suspended the January
29, 2010 hearing due to inclement weather, and told the parties they could
submit further briefing on the issues.  The trial court advised the parties it
would appoint a receiver to carry out the terms of the MSA if they did not
reach an agreement within 15 days.  Both parties filed briefs, and Clayton also
filed a motion for mediation.  

            Clayton
filed a petition for writ of mandamus on March 2, 2010, asserting that the
trial court had effectively denied her requests to order the parties to return
to mediation, and asking that we compel the trial court to order the parties to
return to mediation.  Clayton alternatively argued that the trial court refused
to rule on her motion for rehearing or her request for mediation.  

            After
Clayton filed her petition in this court, the trial court signed an order on
March 2, 2010, addressing the amended motion to enforce the mediated settlement
agreement.  The order directed relator, by March 7, 2010, to (1) pay Russell
the $80,000; (2) execute the unanimous written consent of shareholders of SJC
Enterprises, Inc. in the form revised by Clayton and submitted to Russell on
January 14, 2010; (3) execute the form commercial lease as agreed to in the
MSA, to supply “any and all terms” “except as for the terms spelled out
herein,” with all specific terms for said lease to be supplied by the MSA; (4)
execute the escrow agreement in the form revised by Clayton and submitted to
Russell on January 14, 2010, and again on January 21, 2010, and “immediately
fund” the $15,000.00 escrow fund for repairs; and (5) file or cause to be filed
the joint motion to dismiss with prejudice.  The trial court also awarded
Russell’s counsel $15,000 in attorney’s fees.

            The
March 2, 2010 order further provides that Clayton’s failure to comply with the
order may result in the trial court finding her in contempt of court after
notice and hearing, removing her from her duties as executrix of the estate,
and appointing a third-party administrator at Clayton’s expense, solely for the
purpose of performing all acts, paying and receiving all monies, and executing
all documents necessary to consummate the mediated settlement agreement.  Clayton
requests that we compel the trial court to set aside its March 2, 2010 order
and order the parties to return to mediation.[2]

Standard
of Review

            To
be entitled to the extraordinary relief of a writ of mandamus, the relator must
show the trial court abused its discretion and there is no adequate remedy by
appeal.  In re Gulf Exploration, LLC, 289 S.W.3d 836, 842 (Tex. 2009)
(orig. proceeding).  A trial court abuses its discretion if it reaches a
decision so arbitrary and unreasonable as to constitute a clear and prejudicial
error of law, or if it clearly fails to correctly analyze or apply the law.  In
re Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005) (orig.
proceeding) (per curiam); Walker v. Packer, 827 S.W.2d 833, 839 (Tex.
1992) (orig. proceeding).  The relator must establish that the trial court
could reasonably have reached only one decision.  In re Dillard Dep’t
Stores, Inc., 198 S.W.3d 778, 780 (Tex. 2006) (orig. proceeding) (per
curiam).  In determining whether appeal is an adequate remedy, we consider
whether the benefits outweigh the detriments of mandamus review.  In re BP
Prods. N. Am., Inc., 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding).  

Interpretation
of the MSA

            Clayton
argues that the MSA requires the parties to mediate disputes about the terms
and performance of the agreement and, therefore, that the trial court abused
its discretion by not ordering the parties to return to mediation.  

            The
provision on which Clayton relies states as follows:

If one or more disputes arise with regard to the
interpretation and/or performance of the Settlement Agreement and Release or
any of its provisions the parties agree to attempt to resolve same by phone
conversation and/or mediation with Judge Scanlon, the mediator that facilitated
the settlement.

Settlement
agreements are subject to the rules of contract construction.  Doe v. Tex.
Ass’n of Sch. Bds., Inc., 283 S.W.3d 451, 458 (Tex. App.—Fort Worth 2009,
pet. denied); Old Republic Ins. Co. v. Fuller, 919 S.W.2d 726, 728 (Tex.
App.—Texarkana 1996, writ denied).  Our primary concern in interpreting a
contract is to ascertain the true intent of the parties as expressed in the
contract.  Seagull Energy E & P, Inc. v. Eland Energy, Inc., 207
S.W.3d 342, 345 (Tex. 2006).  We examine the writing as a whole in an effort to
harmonize and give effect to all the provisions of the contract so that none
will be rendered meaningless.  J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003).  We presume the parties to a contract intend every
clause to have some effect.  Heritage Res., Inc. v. NationsBank, 939
S.W.2d 118, 121 (Tex. 1996).  We give terms their plain, ordinary, and
generally accepted meaning unless the contract shows the parties used them in a
technical or different sense.  Id.  In construing a contract, the court
may not rewrite the contract or add to its language.  Am. Mfrs. Mut. Ins.
Co. v. Schaefer, 124 S.W.3d 154, 162 (Tex. 2003).  

            Whether
a contract is ambiguous is a question of law that must be decided by examining
the contract as a whole in light of the circumstances present when the contract
was entered.  Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940
S.W.2d 587, 589 (Tex. 1996).  If the contract language can be given a certain
or definite meaning, then the contract is not ambiguous and the court should
interpret it as a matter of law.  Universal Health Servs., Inc. v.
Renaissance Women’s Group, P.A., 121 S.W.3d 742, 746 (Tex. 2003).  Lack of
clarity does not create an ambiguity; nor does an ambiguity arise merely
because the parties to the agreement proffer different interpretations.  DeWitt
County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999).  An
ambiguity arises when an agreement is susceptible to more than one reasonable
meaning after the application of established rules of construction.  Universal
Health Servs., Inc., 121 S.W.3d at 746.  The construction of an unambiguous
contract is a question of law for the court.  Willis v. Donnelly, 199
S.W.3d 262, 275 (Tex. 2006).  

            For
the purposes of our analysis we presume that “phone conversation” as used in
the MSA means a phone conversation involving the parties and Judge Scanlon. 
Whether the MSA requires (1) a phone conversation or mediation with
Judge Scanlon or (2) a phone conversation and mediation with Judge
Scanlon, Clayton did not ask the trial court to order either.  Instead, Clayton
asserted that the MSA required only mediation with Judge Scanlon.  Clayton
never asked the trial court to order a phone conversation with Judge Scanlon.  

            Clayton
contends that the MSA’s clear intent is to preclude the parties from litigating
their disputes over the agreement.  The parties agreed in the MSA to (1) to
execute a joint motion to dismiss, dismissing all their claims and causes of
action; (2) to waive all claims and causes of action against the other party,
except for disputes arising out of the MSA; and (3) to release each other from
all costs, expenses, and attorney’s fees.  Clayton contends that an
interpretation requiring any steps other than mediation renders those
provisions meaningless.  However, ordering a phone conversation in tandem with
mediation or as an alternative to mediation does not render the cited
provisions of the MSA meaningless.  In addition, Clayton presumes that
mediation would succeed if ordered, and that no other dispute resolution method
would succeed.  

            To
establish an abuse of discretion by the trial court, Clayton must show that the
trial court could have made only one decision and not the decision it made.  See
In re Dillard Dep’t Stores, Inc., 198 S.W.3d at 780.  This Clayton has
failed to do.  Clayton requested that the trial court order only mediation;
however, the MSA does not require only mediation.  Therefore, we conclude it
was not an abuse of discretion for the trial court to have refused Clayton’s
request to order the parties to return to mediation.  In light of our
conclusion that the there was no abuse of discretion, we need not address
whether Clayton has an adequate remedy by appeal.  

Conclusion

Clayton has not established her entitlement to the
extraordinary relief of a writ of mandamus as to the trial court’s refusal to
order mediation.  Accordingly, we deny relator’s petition for writ of mandamus
and supplemental petition for writ of mandamus and lift our stay of March 4,
2010. 

 

                                                                                    PER
CURIAM

 

 

 

Panel consists of Justices Frost, Boyce, and Sullivan. 









[1]
Hindman’s email states, in
relevant part:

Lease

My client advises that the
commercial property is damages [sic] from IKS [sic], roof leaks, and water
damage.  She is not inclined to sign any lease agreement until the existing
state of damage is repaired.

80K

My client advises that she
need [sic] another 30 days to get the proceeds.  She had a cash buyer for the
Providence location, but inspections revealed extensive mold and moisture
damage to the carpet and walls, and the buyers backed out.  The home, in the
care and control of Ms. Russell, had no utilities and no air, thus, the damage
and loss of a bona fide buyer.

Escrow Account

No success finding an escrow
volunteer or otherwise, so I suggest that Kristen set up a bank account
requiring two signatures!

My client advises that she
will not attend the “closing” tomorrow.  We need to work out the repairs to the
commercial property before we do a lease.





[2] In light
of the trial court’s March 2, 2010 order on the amended motion to enforce,
Clayton’s complaint that the trial court refused to rule on her requests to
order the parties to return to mediation is moot.